United States District Court
Southern District of Texas
**ENTERED**
August 14, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| TIERRA CALIENTE MUSIC GROUP, | § | |
| S.A. DE C.V., *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 7:18-CV-252 |
| | § | |
| SER-CA DISCOS, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER DENYING DEFENDANT/COUNTER-PLAINTIFF SER-CA DISCOS, INC.'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

### I.   Factual and Procedural Background

Now before the Court is the "Motion for Summary Judgment and Motion to Dismiss" (collectively, "Motion") filed by Defendant/Counter-Plaintiff Ser-Ca Discos, Inc. ("Serca"). (Dkt. No. 24).  Plaintiffs/Counter-Defendants Tierra Caliente Music Group, S.A. de C.V., d/b/a Remex Music ("Remex") and Midas Musical, Inc. ("Midas")[1] originally filed suit against Serca on March 16, 2018 in the 430th Judicial District Court, Hidalgo County, Texas, complaining of Serca's interference with Plaintiffs' "valid contracts to commercialize [the] 2016 Songs and YouTube Videos" of Mexican musical group La Leyenda.  (Dkt. No. 1-1 at ¶ 18).  Plaintiffs alleged that on or about July 25, 2017, Serca began a "fraudulent and destructive campaign" to prevent Plaintiffs' distribution and promotion of the Songs and Videos when it issued "Takedown Notices" to YouTube pursuant to the federal Digital Millennium Copyright Act ("DMCA"), fraudulently claiming that Serca held the copyrights to content included in the Videos.  (*Id.* at ¶ 14).  On August 9, 2018, Serca removed the case to this Court on the

---

[1]  In the interests of clarity and brevity, the Court herein refers to Remex and Midas collectively as "Plaintiffs."

uncontested grounds that Plaintiffs' state-law causes of action for tortious interference with contract, tortious interference with prospective and continuing contractual relations, and violation of the Texas Theft Liability Act arose under federal copyright law. (Dkt. No. 1); *see* 28 U.S.C. §§ 1338, 1454, 1446. Plaintiffs' First Amended Original Complaint, now the live pleading and subject of the instant Motion, replaced these causes of action with a single claim that, "[b]y filing the Takedown Notices, [Serca] knowingly and materially misrepresented that the YouTube videos constitute an infringement," and thereby violated a particular subsection of the DMCA, 17 U.S.C. § 512(f). (Dkt. No. 10 at ¶ 14). Plaintiffs seek relief in the form of "actual damages, costs, and attorney fees resulting from YouTube relying upon such misrepresentations and removing or disabling access to the YouTube Videos." (*Id.*).

Serca has since brought federal law, common law, and state law counterclaims, in addition to seeking declaratory and injunctive relief. (Dkt. No. 20). However, its Motion seeks summary judgment under Federal Rule of Civil Procedure 56, and dismissal or judgment on the pleadings under Rules 12(b)(6) or 12(c), only with respect to Plaintiffs' single claim against it. Upon consideration of the Motion, the parties' responsive briefing (Dkt. Nos. 29, 32), and the summary judgment evidence, in light of the relevant law, the Court finds that the Motion must be **DENIED** for the following reason.

## II    Serca's Rule 12 Motion

### A.    Standard of Review

The Court first considers whether Plaintiffs' First Amended Complaint, rather than the various evidentiary submissions on which the parties otherwise rely,[2] overcomes Serca's Rule

---

[2] The Court may not consider these submissions in ruling on Serca's Rule 12 Motion, as the attachments to Serca's Motion and Plaintiffs' response are not attached to Plaintiffs' First Amended Complaint or referred to therein, nor are they matters of which the Court can comfortably take judicial notice. *Cf.*

2 / 18

12(b) challenge. Although the Court construes Serca's Rule 12 Motion as one for judgment on the pleadings under Rule 12(c), as Serca filed the Motion "after the pleadings [were] closed"—that is, after the deadline to respond to Plaintiffs' First Amended Complaint—a Rule 12(c) motion is subject to the same standard of review as a Rule 12(b)(6) motion for failure to state a claim. *See* (Dkt. No. 18) (extending deadline for Serca respond to First Amended Complaint to December 20, 2018); (Dkt. No. 24) (Motion filed January 24, 2019); *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (Rule 12(b)(6) and 12(c) motions subject to same standard). "Rule 12(b)(6) authorizes the filing of motions to dismiss asserting, as a defense, a plaintiff's 'failure to state a claim upon which relief can be granted,'" and is read in conjunction with the federal pleading standard. *Inclusive Communities Project,* 920 F.3d at 899 (quoting FED. R. CIV. P. 12(b)(6)); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677-68 (2009); FED. R. CIV. P. 8(a)(2) ("A pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief[.]") "Thus, claims may be dismissed under Rule 12(b)(6) 'on the basis of a dispositive issue of law,'" and also if the complaint does not contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Inclusive Communities Project*, 920 F.3d at 899 (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Iqbal*, 556 U.S. at 678). The "plausibility" standard does not require detailed factual allegations, but a party's "obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *accord Iqbal*, 556 U.S. at 678. To "show" that the pleader is entitled to relief, the well-pleaded facts of the complaint must allow the court, drawing on its "judicial experience and

---

*Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (summarizing evidence that may be considered at this stage).

common sense," to infer "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

B.  **Pleaded Factual Allegations**

Plaintiffs' First Amended Complaint alleges that on August 27, 2015, music producers German Chavez ("German") and Domingo Chavez ("Domingo") entered into a written "Exclusivity Agreement" with La Leyenda "front man" Eliseo Robles ("Robles"), under which Robles agreed on behalf of La Leyenda to record a certain number of creative works, including songs and music videos, and to give German and Domingo the sole and exclusive rights to utilize and control these works. (Dkt. No. 10 at ¶¶ 5, 6). In accordance with the Exclusivity Agreement, La Leyenda recorded a number of songs ("2016 Songs")[3] and performed in videos for the songs *Ponte de Modo*, *La Comezón*, and *La Apuesta*. (*Id.* at ¶ 7). On an undisclosed date, German and Domingo assigned to Plaintiff Remex the global (other than U.S.) distribution rights to all work created under the Exclusivity Agreement. (*Id.* at ¶ 8). German and Domingo entered into a similar contract with Plaintiff Midas, granting it the exclusive rights to administer the rights to the 2016 Songs and videos in the United States. (*Id.*). Midas, in turn, contracted with non-party Select-O-Hits, Inc. ("Select-O-Hits") to distribute new musical albums produced and released by Midas, including the 2016 Songs and videos. (*Id.*).

At some point in time, Remex uploaded the following videos to YouTube and published them on its *RemexMusic* YouTube account: (1) *La Leyenda-Ponte de Modo (Video Oficial)*; (2) *La Leyenda-La Comezón (Audio Oficial)*; (3) *La Leyenda-Quiero Alguien Que Me Quiera*; (4) *La Leyenda-La Apuesta ft. Edwin Luna (Video Oficial)*; (5) *La Leyenda-La Mantequilla ft. Eliseo Robles y Los Barbaros del Norte (Video Lyric)*; (6) *La Leyenda-Cositas Malas (Video Lyric)*; (7) *Making of "La Comezón" La Leyenda*; and (8) *Making of "La Apuesta" La Leyenda ft. Edwin

---

[3]  Plaintiffs allege that the 2016 Songs include, but are not limited to, *Ponte de Modo*, *La Mantequilla*, *La Comezón*, *Cositas Malas*, *Quiero Alguien Que Me Quiera*, and *La Apuesta*. (Dkt. No. 10 at ¶ 7 n.1).

*La Trakalosa* (collectively, "YouTube Videos"). (*Id.* at ¶ 9). Plaintiffs allege that "[b]y uploading the YouTube Videos and distributing the 2016 Songs through web-based platforms like iTunes and Spotify, Plaintiffs participates [sic] in the revenue stream generated by the distribution of the 2016 Songs and Videos." (*Id.*).

On or about July 25, 2017, former La Leyenda representative Serca—a "stranger" to the Exclusivity Agreement—"began a fraudulent and destructive campaign to obstruct and prevent Plaintiffs from distributing and promoting the 2016 Songs and YouTube Videos." (*Id.* at ¶ 10). Specifically, Serca issued Takedown Notices to YouTube pursuant to the DMCA, "fraudulently claiming that [Serca] held the copyrights to the content included in the YouTube Videos." (*Id.*). Plaintiffs represent that "[t]he DMCA allows any person claiming to hold a copyright to request that the service provider—in this case, YouTube—remove access to the allegedly infringing content by written request, signed under penalty of perjury," and that "[n]o proof of any copyright registration is needed for a Takedown Notice to be acted upon by the Service Provider." (*Id.* at ¶ 11). "Naturally, [Serca's] Takedown Notices caused YouTube to remove [Remex's] YouTube Videos from the *RemexMusic* account." (*Id.* at ¶ 12). Under its agreement with YouTube, Remex is a "content creator" entitled to payment from YouTube each time a video is viewed, and therefore "[t]he Takedown Notices caused Plaintiffs to suffer economic damages as well as reputations [sic] damages." (*Id.*).

Plaintiffs further allege that the Takedown Notices "resulted in [Remex's] YouTube account receiving two out of three possible 'strikes.'" (*Id.* at ¶ 13). "A third strike will result in the catastrophic termination of [the] account, which includes videos of other exclusive artist content owned by [Remex] and, in some cases, managed by [Midas]." (*Id.*). "Because of the serious threat to the continued existence of its YouTube account, and believing that [Serca]

would continue to issue Takedown Notices, [Remex] could not jeopardize the continued existence of its [account] by uploading any more La Leyenda content." (*Id.*). As a result, Serca has "effectively hijacked" Plaintiffs' right to benefit from the 2016 Songs and YouTube Videos. (*Id.*).

**C.     Analysis**

As best as the Court can discern, Serca's Motion makes only one argument that does not rely on evidence outside Plaintiffs' First Amended Complaint, and which the Court may therefore consider in the context of Serca's request for relief under Rule 12: that Plaintiffs have not alleged copyright ownership or registration of the 2016 Songs, in which case their DMCA claim fails as a matter of law. (Dkt. No. 24 at p. 4).

The Court considers Serca's argument against the backdrop of the DMCA's "takedown" and "put-back" procedures giving rise to Plaintiffs' single claim against Serca under § 512(f) of the Act.[4]  Under the takedown procedures outlined in § 512(c), service providers such as YouTube may "avoid copyright infringement liability for storing users' content if—among other requirements—the service provider 'expeditiously' removes or disables access to the content after receiving notification from a copyright holder that the content is infringing." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1151 (9th Cir. 2016) (quoting 17 U.S.C. § 512(c)).  Under the put-back procedures set forth in § 512(g), a user notified of the takedown[5] has the option of restoring the content by sending a counter-notification, which must include a statement of "good faith belief that the material was removed or disabled as a result of mistake or misidentification[.]" *Id.* (quoting 17 U.S.C. § 512(g)(3)(C)).  Upon receipt of a valid counter-

---

[4]   The Court resorts to authority outside this Circuit in the the absence of Fifth Circuit precedent interpreting these procedures.

[5]   To avoid liability for removing or disabling content, the service provider must notify the user of the takedown. *Lenz*, 815 F.3d at 1151 (citing 17 U.S.C. § 512(g)(1)-(2)).

notification, the service provider must inform the person who provided the takedown notice of the counter-notification, and must restore the content unless the provider receives notice that the person has filed a lawsuit against the user seeking to restrain the user's infringing behavior. *Id.*; *see* 17 U.S.C. § 512(g)(2)(B)-(C).

"If an entity abuses the DMCA, it may be subject to liability under § 512(f)," which provides in full:

> (f) Misrepresentations.—Any person who knowingly materially misrepresents under this section—
>
> > (1) that material or activity is infringing, or
> >
> > (2) that material or activity was removed or disabled by mistake or misidentification,
>
> shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

*Lenz*, 815 F.3d at 1151; 17 U.S.C. § 512(f).

Consistent with these procedures, Plaintiffs allege that YouTube removed the YouTube Videos from user Remex's account upon receipt of Serca's Takedown Notices, which allegedly made the "fraudulent" claim that Serca held the copyrights to the content included in the Videos. Plaintiffs' ensuing claim that Serca violated § 512(f) (and in particular, subsection (1)),[6] draws from the plain language of the statute, which allows an "alleged infringer" to recover against "any person" who "knowingly materially misrepresents" in a takedown notice "that material or activity is infringing." *See ISE Entm't Corp. v. Longarzo*, 2018 WL 1569803, at *4-6 (C.D. Ca. Feb. 2, 2018) (finding significant that statute includes both "alleged infringer" and "copyright

---

[6] The language of the statute makes clear that subsection (1) refers to misrepresentations in a takedown notice, whereas subsection (2) refers to misrepresentations in a put-back notice.

owner" among those who may recover for fraudulent takedown notice, and concluding that neither copyright ownership nor registration is prerequisite to bringing § 512(f) action).[7] Plaintiffs' pleading offers a plausible theory as to why it enjoys the status of an "alleged" infringer with standing to sue Serca: that the Exclusivity Agreement and subsequent assignments gave Plaintiffs the exclusive rights to distribute and administer rights to La Leyenda songs and videos recorded under the Agreement, and that Serca's claim to hold the copyrights to the content of the YouTube Videos, as communicated to YouTube through the Takedown Notices, was "fraudulent." Plaintiffs have stated a claim against Serca within the meaning of § 512(f), and Serca's Rule 12 Motion must be denied.

### III.   Serca's Motion for Summary Judgment

#### A.   Standard of Review

A district court must grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the lawsuit under the governing law, and is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party moving for summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings and materials in the record, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a), (c). Once the moving party carries its burden, the burden shifts to the nonmovant to go beyond the pleadings and provide specific facts showing the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 324; FED. R. CIV. P. 56(c). In

---

[7] In contrast to *Longarzo*, to which Plaintiffs cite, none of the authorities to which Serca cites in support of its Rule 12 argument even discuss § 512(f). *See* (Dkt. No. 24 at ¶ 11; Dkt. No. 29 at ¶ 8; Dkt. No. 32 at ¶ 17).

conducting its review of the summary judgment record, the court "may not make credibility determinations or weigh the evidence" and must resolve doubts and reasonable inferences regarding the facts in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255; *Dean v. City of Shreveport*, 438 F.3d 448, 454 (5th Cir. 2006). However, the nonmovant cannot satisfy its burden with "conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *see also Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

**B.      Ownership of Rights to 2016 Songs and YouTube Videos**

**1.      Serca's Evidence**

Through its Motion for Summary Judgment, Serca seeks to defeat Plaintiffs' DMCA claim by establishing its ownership of all rights to the 2016 Songs and YouTube Videos, and by appealing to two doctrines—international comity and standing—on the basis of the same assertions of fact. (Dkt. No. 24 at ¶¶ 3-14). According to Serca, the evidence attached to its Motion establishes that: (1) a Mexican court adjudicated all such rights to belong to Discos y Cintas Serca, S.A. de C.V. ("Serca-Mexico") by virtue of a contract that pre-dates and spans the term of the alleged Exclusivity Agreement; and (2) Serca-Mexico assigned such rights to Serca. (*Id.*).

Serca attaches a copy of the Spanish original "Exclusivity and Assignment of Rights Agreement" ("Recording Agreement"),[8] as well as a certified English translation, which reflect

---

[8] The Court adopts the term "Recording Agreement" found elsewhere in the record, in order to distinguish this Agreement from the alleged Exclusivity Agreement on which Plaintiffs rely.

9 / 18

an agreement between Serca-Mexico represented by Servando Cano Rodríguez ("Cano, Sr."), and the members of La Leyenda represented by Robles,[9] wherein the parties agreed that La Leyenda's "ALBUMS, PHONOGRAMS, VIDEOS, DVDS, DUAL DISC, LIVE RECORDINGS, and any other technical medium currently known, or that could be developed in the future, such as all the rights that come thereof, are exclusive property of [Serca-Mexico]," for a term of five years beginning on February 15, 2012.  (*Id.* at ¶ 13; Exh. C at pp. 1, 2, 4, 14, 30, 36 37; Exh. D).  The Recording Agreement contains a "Jurisdiction" clause stating that "for the interpretation, compliance or any other circumstance related to this agreement, the parties submit themselves to the laws of the State of Nuevo Leon, Mexico, and to the jurisdiction and competence of the Courts of the City of Monterrey, N.L., renouncing to any other jurisdiction that could correspond because of their current or future address."  (*Id.*, Exh. C at p. 34).

As indicated by Serca's submission of a copy of the Spanish original and certified English translation of the "Judgment on Direct Amparo" ("Amparo Judgment" or "Judgment") issued by the "Third Civil Federal Collegiate Court of the Fourth Circuit corresponding to the regular session of [June 6, 2018]," in Monterrey, Nuevo Leon, Mexico, the parties sought judicial intervention with respect to the Recording Agreement in the jurisdiction specified therein.  *See* (*id.*, Exh. A at pp. 1-3; Exh. B).  Plaintiffs' response objects to the "Translator's Note" appearing only in the English translation of the Amparo Judgment and purporting to define and explain the amparo process, and the Court agrees that the footnote "is outside the scope of [a] translator's language-translation expertise and does not constitute permissible evidence on foreign law[.]"  (Dkt. No. 29 at ¶ 11; *see id.*, Exh. A at p. 2 n.1).  In the absence of any such evidence, the Court resorts to secondary authority for a generalized description of the

---

[9]  La Leyenda is referred to in the Recording Agreement as "The Artist," as comprised by the following five individuals: Robles, Israel Gutierrez Leija, Manolo Robles Perez, Arístedes Gustavo Carcano Flores, and Robert Arturo Naranjo Ochoa.  (Dkt. No. 24, Exh. C at p. 4).

amparo as an "extraordinary recourse in the Mexican justice system, with no equivalent in the common law tradition," through which individual complainants may seek relief from "the injurious consequences of unconstitutional laws and arbitrary or legally unfounded actions of administrative and judicial authorities." (Dkt. No. 29 at ¶ 11); Bruce Zagaris, *The Amparo Process in Mexico*, 6 U.S.-Mex. L.J. 61, 61, 66-67 (1998). Literally, "amparo" means "protection, favor, or aid." Zagaris, 6 U.S.-Mex. L.J. at 61. Amparo relief can be "direct," as in the present case, or "indirect"; the former "is started in either the Supreme Court, or the appellate circuit courts," whereas the latter "is initiated in a district court, but the decision may be appealed to a higher court." *Id.*

As best as the Court can discern, the direct amparo from which the Judgment issued was filed by Robles and three other members of La Leyenda ("Complainants") "for the violation of articles 14 and 16 of the Political Constitution of the United Mexican States, against the authority and for the following act": a final judgment issued by the "Magistrate of the First Civil Court of the Superior Court of Justice of the State of Nuevo Leon" on either October 31, 2016 or October 31, 2017,[10] which concluded, in relevant part, that Complainants were "condemned to forcefully comply with the [Recording Agreement] dated [February 15, *2011*],"[11] and "must record for [Serca-Mexico] two new and unreleased albums with a minimum of ten musical selections that are unreleased, already released or covers (Recordings)," under "what was agreed in the sixth clause of the [Recording Agreement]." (Dkt. No. 24, Exh. A at pp. 2-4) (emphasis added). As the Amparo Judgment goes on to observe, the parties to the Recording Agreement agreed in the sixth clause that La Leyenda would record, during the term of the contract: "(i) 5 (FIVE) new and unreleased ALBUMS with a minimum of 10 MUSIC SELECTIONS, that are unreleased,

---

[10] The Amparo Judgment contains both dates. *See* (Dkt. No. 24, Exh. A at pp. 3, 24).
[11] This date differs by one year from the date of execution reflected in the Recording Agreement itself.

already released or covers (Recordings)" and "(ii) 1 (ONE) Record recorded live to be edited with a CD and a DVD which shall contain at least 10 ten MUSICAL SELECTIONS." (*Id.* at p. 16; *see also* Exh. C at p. 20). The Judgment then reasons that "it was mentioned the existence of [only] four albums and one live record," such that "at least one of the albums…which the [Complainants] were obliged to make was pending to be recorded," that one of those four albums did not comply with the terms of the contract, and that "while the terms of the contract are not complied with, the contract shall remain in full force and effect for the parties." (*Id.*, Exh. A at pp. 21-23). Therefore, the Amparo Judgment ordered that Complainants were not entitled to the "protection" or "shield" of amparo relief from the contested final judgment. (*Id.* at p. 24).

Serca further relies on the brief, attached declaration of Servando Angel Cano Resendez ("Cano, Jr."), the son of Cano, Sr. and Vice-President of Serca "in charge of [its] business affairs and dealings with [Serca-Mexico]," in which Cano, Jr. both authenticates the attached Recording Agreement and states the following:

> Both SERCA and SERCA MEXICO are principally owned by my father Servando Cano Rodriguez. Beginning with SERCA's incorporation on December 13, 2004, my father personally assigned SERCA MEXICO's United States rights to the [Recording Agreement] to SERCA, including the copyrights in La Leyenda's sound recordings and also including the songs which the Plaintiffs are claiming under their alleged "Exclusivity Agreement," the so-called "2016 Songs."

(*Id.*, Exh. F).

2. **Analysis**

Even without resort to Plaintiffs' evidence—the affidavits of German Chavez and Robles, to which Serca has lodged multiple objections[12]—the Court finds that Serca's evidence does not establish that the Amaparo Judgment should be given the effect urged by Serca under principles of international comity or standing, or that Serca obtained all rights to the 2016 Songs and

---

[12] *See* (Dkt. No. 32 at ¶¶ 3(A)-(K), 4(A)-(F)).

Videos through assignment. Therefore, Serca's request for summary judgment on the basis of its claimed ownership of rights must be denied.

a.      **International Comity**

"Under principles of international comity" to which Serca first appeals, the Court must give conclusive effect to "a foreign court's judgment on a matter" when the following criteria are satisfied: "(1) the foreign judgment was rendered by a court of competent jurisdiction, which had jurisdiction over the cause and the parties, (2) the judgment is supported by due allegations and proof, (3) the relevant parties had an opportunity to be heard, (4) the foreign court follows procedural rules, and (5) the foreign proceedings are stated in a clear and formal record." *Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV*, 347 F.3d 589, 594 (5th Cir. 2003); *see* (Dkt. No. 24 at ¶¶ 3-9). The Court need not reach whether the Amparo Judgment meets all of these criteria, as Serca has failed to establish "beyond peradventure" that the Judgment adjudicated the matter at issue in this case, or that Plaintiffs or their assignors had an opportunity to be heard on that matter. *See Int'l Transactions*, 347 F.3d at 594 (comity is affirmative defense, and therefore parties urging it have burden of proof); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (at summary judgment stage, party asserting affirmative defense "must establish beyond peradventure *all* of the essential elements of the…defense to warrant judgment in [its] favor") (emphasis in original); (Dkt. No. 29 at ¶¶ 14-16).

Without the benefit of evidentiary aid from a Mexican law expert, the Court can only hazard a "best guess" as to what the Amparo Judgment adjudicates. Moreover, based on the Court's general understanding of the amparo process and the language of the Judgment itself, Complainants were merely denied protection from another Mexican court judgment finding that La Leyenda was obligated to record two additional albums for Serca-Mexico under the sixth

clause of the Recording Agreement. Only the Amparo Judgment—not, according to its recitation of the underlying court's conclusions, the contested final judgment itself—contains the broad language that "while the terms of the contract are not complied with, the contract shall remain in full force and effect for the parties." If the Amparo Judgment adjudicated nothing apart from Complainants' request for protection from the challenged judgment, the record calls into question whether this language is the Mexican equivalent of "dicta." *See* (Dkt. No. 29 at ¶ 14). Moreover, even if it is not, that the Amparo Judgment refers to the enforcement of the "contract…for the parties" places in dispute the extent to which the contract may be enforced against non-parties, like Plaintiffs, who claim rights to La Leyenda songs and videos potentially recorded after the expiration of the five-year term of the Recording Agreement,[13] and by virtue of a different contract. *See* (*id.* at ¶¶ 15, 16). Put another way, the Amparo Judgment does not reflect that either court considered or adjudicated Serca-Mexico's *superior* right to ownership of such rights, after giving "the relevant parties…an opportunity to be heard"—one of the criteria for giving conclusive effect to a foreign court judgment. Plaintiffs, through the alleged assignments from German and Domingo Chavez, are "relevant parties" with respect to this issue, and although Serca's Motion alleges that "Plaintiffs do not deny that they participated, funded, and provided the legal representation in the litigation resulting in the Mexican Judgment," it offers no evidentiary support for this allegation. (Dkt. No. 24 at ¶ 6; *see id.* at ¶ 15). For all of

---

[13] As noted *supra*, Serca's own evidence places in dispute when the five-year term ended; the Recording Agreement reflects an execution date of February 15, 2012, whereas the Amparo Judgment denotes an execution date of February 15, 2011 for the same Agreement. Plaintiffs, through the affidavit of Robles, offer the only explanation for this discrepancy: that the Recording Agreement "was for a five-year term that would end in February 2016," and that Serca-Mexico "fraudulently altered the contract to indicate the term would end in February 2017." (Dkt. No. 29, Exh. 2 at ¶ 8). Serca makes various, generalized objections to the paragraph of Robles's affidavit which contains this explanation, but the Court need not resolve the objections, as Serca's own evidence reveals the discrepancy in dates. *See* (Dkt. No. 32 at ¶ 4(B)).

these reasons, the Court finds that Serca has failed to meet its burden to establish the defense of international comity to Plaintiffs' DMCA claim.

**b.　Standing**

Serca also appeals to the doctrine of standing, although the single case to which it cites concerned the application of collateral estoppel with respect to the issue of standing, rather than standing itself. (Dkt. No. 24 at ¶¶ 12-14); *see Hacienda Records, LP v. Ramos*, 718 F. App'x 223 (5th Cir. 2018). The Court has already observed that § 512(f) allows an "alleged infringer" to bring suit to recover against "any person" who issues a fraudulent takedown notice, and since the Amparo Judgment does not conclusively remove the "alleged" label from Plaintiffs in this case, they have standing to sue. *See Longarzo*, 2018 WL 1569803, at *6 ("alleged infringer" has standing to sue under § 512(f)).

**c.　Assignment**

Other than the Amparo Judgment, Serca has only Cano, Jr.'s statement that in 2004, Serca-Mexico assigned all U.S. rights, including copyright rights, to the "so-called 2016 Songs." Standing alone, this statement is too generalized and conclusory to establish that Serca owns all rights to the 2016 Songs and YouTube Videos, and does not defeat Plaintiffs' DMCA claim.

**C.　Damages**

Finally, Serca moves for summary judgment on the asserted basis that Plaintiffs "have no damages or have waived any alleged damages," since "[a]fter initially contesting [Serca's] takedown notices, the Plaintiffs voluntarily withdrew La Leyenda's sound recordings from all digital platforms." (Dkt. No. 24 at ¶ 15). In support of this assertion, Serca offers a copy of an email from Johnny Phillips, purportedly the owner of Select-O-Hits, to a representative of Serca on April 17, 2017, stating that "[i]t appears that Remex has pulled down all of its La Leyenda

15 / 18

videos and notified Orchard to take down all La Leyenda music." (*Id.* at ¶ 15, Exh. E).[14] The email goes on to state:

> As you know, as soon as Serca issues a claim, that results in a counter claim from Remex. These claims and counterclaims mount up against both parties and can cause major problems at YouTube, Spotify, Pandora, etc.
>
> If Serca finds other examples of the music still being available on any platform, please notify Select-O-Hits before you file a claim. We'll notify Orchard to rectify it.
>
> I have asked Remex not to file any counter-claims as well.

(*Id.*).

Section 512(f) imposes liability for "any damages, including costs and attorneys' fees, incurred by the alleged infringer…who is injured" by a fraudulent takedown notice "as the result of the *service provider* relying upon such [notice] in *removing or disabling access to the material or activity claimed to be infringing*[.]" 17 U.S.C. § 512(f) (emphasis added). As Serca's cited authority recognizes, the plain language of the statute instructs that where a takedown notice results in no takedown by the service provider, an alleged infringer has suffered no damages within the meaning of the statute and cannot pursue a claim under § 512(f). *See Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1028 (N.D. Cal. 2011) (since plain language of statute limits damages "to those caused by an actual takedown," dismissing § 512(f) claim where no takedown occurred); *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 704-05 (D. Md. 2011) (granting defendant's request for summary judgment on § 512(f) claim where takedown notice "did not provoke a response from [the

---

[14] Plaintiffs' pleading identifies Select-O-Hits as the company with which Midas contracted to distribute the 2016 Songs and YouTube Videos, and Serca's Motion identifies "Orchard" as the "aggregate company" apparently used by Select-O-Hits "to upload La Leyenda's music on all digital platforms." (Dkt. No. 10 at ¶ 8; Dkt. No. 24 at ¶ 15).

service provider] and did not result in any harm to Plaintiffs"); (Dkt. No. 32 at ¶ 19).[15]  Here, however, Plaintiffs both allege and provide evidence that YouTube removed La Leyenda material uploaded by Plaintiffs after receiving takedown notices from Serca.  Serca's summary judgment evidence—the email—simply indicates Phillips's belief that as of April 17, 2017, Plaintiffs had "pulled down" or given instructions to "take down" all of its La Leyenda videos and music, but does not disprove that at some point during what Plaintiffs describe in their pleading as a "fraudulent and destructive campaign" by Serca, YouTube itself took down material in response to a takedown notice from Serca.  Moreover, despite Serca's attempt to prevent the Court's consideration of Plaintiffs' summary judgment affidavits through the use of multiple, generalized objections, the Court finds no basis to ignore German Chavez's statements that on several occasions, service providers removed La Leyenda material uploaded by Plaintiffs after Serca submitted takedown requests.  *See* (Dkt. No. 29, Exh. 1 at ¶¶ 9, 10, 12-14; *see* Dkt. No. 32 at ¶ 3(E), (F), (H)-(J)).[16]  Chavez attests that on the first of those occasions, Remex sent "counter-notices" (i.e., put-back notices) "to no avail," as YouTube removed the subject videos ("Videos 1-5") and issued a first "copyright strike" on Remex's channel.  (Dkt. No. 29, Exh. 1 at ¶ 10).[17]  After another takedown notice from Serca in March 2017, YouTube removed the videos

---

[15] Serca actually relies on this authority to argue that "Plaintiffs withdrew the sound recordings before any adjudication of the claims [under the DMCA procedures] and, as such, do not have a claim against the Defendant." (Dkt. No. 32 at ¶ 19).  However, neither the cited authority nor § 512 specifies that an alleged infringer must attempt a put-back before recovering damages from a person who issued a fraudulent takedown notice that resulted in a takedown by the service provider.  Moreover, as set forth *infra*, Plaintiffs present evidence that Remex made such an attempt in response to Serca's initial set of takedown notices to YouTube, "to no avail."

[16] As the undisputed officer of Plaintiffs, Chavez was in a position to receive notice of any takedown that occurred, and since a takedown issues upon the service provider's receipt of a takedown notice, the Court finds that Chavez's statements satisfy the requirement that they be made "on personal knowledge," and also that such statements "set out facts that would be admissible in evidence."  *See* FED. R. CIV. P. 56(c)(4).

[17] Notably, Serca does not object to Chavez's statement that Remex sent counter-notices "to no avail," and the Court is satisfied that Chavez was in a position to learn of a "copyright strike" placed on Remex's channel by YouTube, and that this fact would be admissible in evidence.  *See* (Dkt. No. 32 at ¶ 3(F)).

targeted by that notice ("Videos 1-6") and issued a second copyright strike which "created the threat that Remex would lose its ability to use YouTube altogether as a revenue source for any or all of its artists." (*Id.* at ¶ 14).[18] Chavez stops short of admitting that the threat motivated Remex to remove all La Leyenda content from its YouTube and other service provider accounts, but even if Serca's email supplies this admission, Plaintiffs are not precluded from showing that they suffered damages as a result of the provider-imposed takedowns and associated copyright strikes that preceded. Serca's final basis for summary judgment is unavailing, and the Motion for Summary Judgment must be denied in its entirety.

### IV.    Conclusion

For the foregoing reasons, the Court hereby **ORDERS** that Serca's Motion for Summary Judgment and Motion to Dismiss is **DENIED**.

SO ORDERED this 14th day of August, 2019, at McAllen, Texas.

_____
Randy Crane
United States District Judge

---

[18] Chavez may permissibly testify to his own understanding of the consequences stemming from the copyright strikes, and Serca is free to counter this testimony with its own evidence.