United States District Court
Southern District of Texas
**ENTERED**
January 26, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| TIERRA CALIENTE MUSIC GROUP, S.A. DE C.V., *et al.*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 7:18-CV-00252 |
| SER-CA DISCOS, INC., | § § § | |
| Defendant. | § | |

## ORDER DENYING PLAINTIFFS' MOTION TO DISMISS, GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS, GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, AND GRANTING SERCA'S RENEWED MOTION FOR SUMMARY JUDGMENT

## I.    Factual and Procedural Background

Now before the Court are: Plaintiffs/Counter-Defendants' Tierra Caliente Music Group, S.A. de C.V., d/b/a Remex Music ("Remex") and Midas Musical, Inc. ("Midas")[1] "Motions to Dismiss and Motions for Summary Judgment and for Judgment on the Pleadings" on Defendant/Counter-Plaintiff Ser-Ca Discos, Inc.'s ("Serca") counterclaims against Plaintiffs (Dkt. No. 66); and Serca's responsive "Renewed Motion for Summary Judgment" on Plaintiffs' single claim against it (Dkt. No. 72).[2]   Plaintiffs originally filed suit against Serca on March 16, 2018 in Hidalgo County state court, complaining of Serca's interference with Plaintiffs' "valid contracts to commercialize [the] 2016 Songs and YouTube Videos" of Mexican musical group La Leyenda. (Dkt. No. 1-1 at ¶ 18).  Plaintiffs alleged that on or about July 25, 2017, Serca began a "fraudulent

---

[1]  In the interests of clarity and brevity, the Court herein refers to Remex and Midas collectively as "Plaintiffs."

[2]  Also pending before the Court are Serca's Motion to Exclude Expert Testimony of Plaintiffs' damages expert, Mariela Ruiz, and to Compel Production of Documents supporting Ruiz's damages calculations (Dkt. No. 64), and Serca's Motion for Leave to File Amended Pleading (Dkt. No. 85), to be addressed separately.

and destructive campaign" to prevent Plaintiffs' distribution and promotion of the songs and videos when it issued "takedown" notices to YouTube pursuant to the federal Digital Millennium Copyright Act ("DMCA"), claiming that Serca held the copyrights to content included in the videos. (*Id.* at ¶ 14). On August 9, 2018, Serca removed the case to this Court on the uncontested grounds that Plaintiffs' state-law causes of action for tortious interference with contract and prospective and continuing contractual relations, and violation of the Texas Theft Liability Act, arose under federal copyright law. (Dkt. No. 1); *see* 28 U.S.C. §§ 1338, 1454, 1446. Plaintiffs' First Amended Original Complaint, now their live pleading, replaced these causes of action with a single claim that, by filing the takedown notices, Serca "knowingly and materially misrepresented that the YouTube videos constitute an infringement," and thereby violated a particular subsection of the DMCA, 17 U.S.C. § 512(f). (Dkt. No. 10 at ¶ 14). Plaintiffs seek relief in the form of "actual damages, costs, and attorney fees resulting from YouTube relying upon such misrepresentations and removing or disabling access to the YouTube Videos." (*Id.*). Serca has since asserted various counterclaims, which as amended, consist of claims for tortious interference with contract and prospective economic advantage, misappropriation, unfair competition in violation of the federal Lanham Act, common-law unfair competition, common-law trademark infringement, violation of the DMCA, and unjust enrichment. (Dkt. No. 58 at Counts 2-7, 9). Serca seeks relief consisting of damages, declaratory and injunctive relief recognizing its continuing, exclusive rights to the subject works, and an accounting of the proceeds obtained by Plaintiffs from these works, plus costs and attorney's fees. (*Id.* at Counts 1, 8, 10, 11, Prayer).

Subsequent to removal, and months before the discovery deadline under the initial scheduling order, Serca moved for summary judgment under Federal Rule of Civil Procedure 56, or dismissal or judgment on the pleadings under Rules 12(b)(6) or 12(c), with respect to Plaintiffs'

single DMCA claim.  (Dkt. No. 24; *see* Dkt. No. 21).  In its order denying the motion, entered on August 14, 2019, the Court first considered Serca's only argument that did not rely on evidence outside the pleadings, and which the Court could therefore consider under Rule 12: that Plaintiffs did not allege copyright ownership or registration of the 2016 songs, in which case their DMCA claim failed as a matter of law.  (Dkt. No. 38 at p. 6).  The Court rejected this argument, observing that the DMCA allows an "alleged infringer" to recover for takedown notices that misrepresent the targeted material as infringing, and that Plaintiffs' pleading offered a plausible theory as to why they enjoy this status: that a contract and subsequent assignments gave Plaintiffs the exclusive rights to distribute and administer rights to the 2016 songs and YouTube videos, and that Serca's claim to hold copyrights to the content of the YouTube videos was "fraudulent."  (*Id.* at pp. 6-8).  The Court next considered Serca's motion for summary judgment through which it sought to establish ownership of all rights to the 2016 songs and YouTube videos via submission of an "Amparo Judgment" in favor of nonparty Discos y Cintas Serca, S.A. de C.V. ("Serca-Mexico") in a Mexican court, and the declaration of Serca's Vice-President, Servando Cano, Jr., attesting to the assignment of such rights from Serca-Mexico to Serca.  (*Id.* at pp. 9-12).  According to Serca, principles of international comity required the Court to give conclusive effect to the Amparo Judgment, which also deprived Plaintiffs of standing to sue, but the Court disagreed, finding that Serca had failed to establish that the Amparo Judgment adjudicated Serca-Mexico's *superior* right to ownership of the 2016 songs and YouTube videos after giving Plaintiffs or their assignors the right to be heard.  (*Id.* at pp. 13-15).  Other than the Amparo Judgment, Serca had only Cano, Jr.'s statement that Serca-Mexico assigned to Serca all U.S. rights, including rights of copyright, to the "so-called" 2016 songs, which statement was too generalized and conclusory to establish Serca's claim to ownership.  (*Id.* at p. 15).  With respect to Serca's final request for summary judgment, on the asserted basis that Plaintiffs had no damages because they voluntarily withdrew material

targeted by the takedown notices, the Court found some evidence of "provider-imposed takedowns and associated copyright strikes that preceded" any such voluntary action by Plaintiffs, and therefore denied the motion in full.  (*Id.* at pp. 16-18).

The case proceeded through several additional scheduling orders, the most recent of which required the filing of dispositive motions by June 18, 2021.  (Dkt. Nos. 37, 43, 46, 52, 60).  On that date, Plaintiffs filed the present Motions seeking dismissal of Serca's counterclaims for lack of standing and mootness under Rule 12(b)(1), failure to join an indispensable party under Rule 12(b)(7), and forum non conveniens, judgment on the pleadings on certain of the common-law claims and request for an accounting, and summary judgment on various bases.  (Dkt. No. 66).  In response, Serca both opposes the requested relief and purports to "renew" its previous motion requesting summary judgment on Plaintiffs' single DMCA claim.  (Dkt. No. 72).[3]  Upon consideration of the Motions, the parties' evidence[4] and responsive briefing,[5] and Plaintiffs' objections to Serca's summary judgment evidence,[6] in light of the relevant law, the Court now finds that principles of international comity require deference to the Mexican courts' rulings and allow for the determination that Serca, as Serca-Mexico's contractual assignee, held and continues to hold exclusive rights to the subject media, to include rights of U.S. distribution and digital transmission.  Although Plaintiffs are entitled to partial relief consisting of judgment on the pleadings on Serca's common-law counterclaims preempted by federal copyright law, and summary judgment on Serca's request for damages consisting of its lost profits, Plaintiffs' Motions must otherwise be denied, and Serca is entitled to summary judgment on Plaintiffs' DMCA claim against it.

---

[3]  Thus, the Motions are not cross-Motions; both sides move for dismissal and/or summary judgment only on the claims asserted by the other.
[4]  (Dkt. No. 58, Exh. A; Dkt. No. 64, Exh. A; Dkt. No. 66, Exhs. 8-10, 12, 13, 16-18; Dkt. No. 67, Sealed Exhs. 1-7, 11, 14, 15; Dkt. No. 72, Exhs. B, C; Dkt. No. 73, Sealed Exhs. A, D-I).
[5]  (Dkt. Nos. 72, 78).
[6]  (Dkt. No. 76).

## II.     Overview of Evidence

### A.     Plaintiffs' Evidence

In support of their requests for relief relying on evidence outside the pleadings, Plaintiffs present the following.  *See* (Dkt. No. 66 at pp. 2-10).  Serca is one of four entities owned and managed by Servando Cano Rodriguez ("Cano")[7] and/or his children, Servando Angel Cano Resendez ("Cano, Jr."), Hector Cano ("Hector"), Claudia Cano ("Claudia"), and Jose Antonio Cano ("Antonio"), to facilitate the Cano family's involvement in the music business.  *See*, *e.g.*, (Dkt. No. 67, Exh. 1 at pp. 8-14).  Cano is the president and an owner of three: Serca, a Texas company and record label for which Servando serves as vice-president and operations manager; Discos y Cintas Serca, S.A. de C.V. ("Serca-Mexico"), a Mexican company and record label that signs music artists and records albums; and Promociones Care, S. de R.L. de C.V. ("Care"), a Mexican company that organizes performances for music artists in Mexico but does not record albums.  (*Id.* at pp. 9-13; Exh. 2 at pp. 10-14, 22, 37).  Hector serves as president and owner of the fourth entity, Texas company Sultana Entertainment, LLC ("Sultana"), which organizes performances in the United States.  (*Id.*, Exh. 1 at pp. 13-14; Exh. 3 at pp. 6-11).

Mexican musical group La Leyenda, formed in 1995, is comprised of lead vocalist Eliseo Robles Gutierrez ("Robles") and four other members.  (Dkt. No. 66, Exh. 12 at ¶¶ 2, 5; Dkt. No. 67, Exh. 14 at p. 4).  Robles is part-owner of the group, along with two other founding members, and owns all trademark rights in the name "La Leyenda," as registered in the United States and Mexico.  (Dkt. No. 66, Exh. 12 at ¶¶ 2-5; Dkt. No. 67, Exh. 14 at p. 4, Exh. 9).[8]  At a disputed point in time, La Leyenda simultaneously entered into a five-year "Representation and Exclusivity Agreement" with Care ("Care Contract") and a separate five-year "Agreement for Assigning

---

[7]  Cano died during the pendency of the litigation, but for ease of reference, the Court refers to him in the present tense.  *See* (Dkt. No. 66, Exh. 4 at p. 18).
[8]  Unless otherwise indicated, the Court uses the term "La Leyenda" to refer to the group as represented by Robles and other individual band members.

Rights and Exclusivity" with Serca-Mexico ("Serca-Mexico Contract"). (Dkt. No. 66, Exhs. 8, 9). According to Robles, La Leyenda recorded multiple albums for Serca-Mexico during the contract period. (*Id.*, Exh. 12 at ¶ 6). Whereas the copies of the Care and Serca-Mexico Contracts later produced to Robles and in this litigation reflect an execution date of February 15, 2012, Robles believed that the contracts were executed on February 15, 2010 or at the latest, 2011, and were fraudulently altered. (Dkt. No. 66, Exh. 8 at p. 24; Exh. 9 at p. 33; Exh. 12 at ¶ 8; Dkt. No. 67, Exh. 14 at pp. 11, 25-26). For this reason, and also due to Robles's concerns that La Leyenda had never been paid royalties or given an accounting of music sales, Robles expressed to the Cano family his intent to cease working with them. (Dkt. No. 66, Exh. 12 at ¶ 7; Dkt. No. 67, Exh. 14 at pp. 22-25).

In his deposition, Cano agreed that no royalties had been paid to La Leyenda—according to him, "because what was spent in promotion is more than…what the recordings actually produced." (Dkt. No. 67, Exh. 1 at pp. 42-43). He conceded that La Leyenda had not been given an accounting of the same, and deferred to Cano, Jr. as the best person with whom to discuss matters of accounting, but Cano, Jr. testified that he lacked knowledge of such matters. (*Id.*, Exh. 1 at pp. 41, 44; Exh. 2 at pp. 33-38). Serca's only other employees, Antonio and a secretary, Veronica Blanco, also disclaimed knowledge, as did Hector and Claudia. (*Id.*, Exh. 2 at p. 17; Exh. 3 at pp. 11, 15, 17; Exh. 4 at pp. 39, 41, 43-44, 55, 62; Exh. 5 at p. 22; Exh. 15 at pp. 59-60, 79, 87-89).

On August 17, 2015—a date after the expiration of the Care and Serca-Mexico Contracts if they were executed on February 15, 2010, but during the five-year contractual period if the Contracts were executed in 2011 or 2012—La Leyenda entered into a new recording agreement with German Chavez ("German") and Domingo Chavez ("Domingo") (collectively, the "Chavez Brothers"). (Dkt. No. 66, Exh. 12 at ¶ 10; Exh. 13 at ¶ 4). Plaintiffs' evidence and pleading refer

to the contract as the "Exclusivity Agreement," but to distinguish it from the other "exclusivity" agreements with Care and Serca-Mexico, the Court will adopt the term "Chavez Brothers Contract." *See* (*id.*, Exh. 13 at ¶ 5). Robles testified that before entering into this contract, he told the Chavez Brothers that his contract with Serca-Mexico had ended. (Dkt. No. 67, Exh. 14 at pp. 9-10, 13). Informed solely by Robles's representation, the Chavez Brothers adopted his belief. (Dkt. No. 66, Exh. 13 at ¶ 5; Dkt. No. 67, Exh. 6 at pp. 16, 22-23; Exh. 7 at pp. 9-10). Consistent with Robles's representation, the Chavez Brothers Contract contained a warranty and representation from Robles that "he has full rights and he is not prevented, either by contract or by law, from agreeing" to the terms of the contract. (Dkt. No. 66, Exh. 13 at ¶ 5). After executing the Chavez Brothers Contract, the parties commenced fulfilling its terms. *See* (*id.* at ¶¶ 6-8). Plaintiffs Remex and Midas, both Chavez Brothers-owned companies, were utilized to produce and distribute work created by La Leyenda under the contract. *See* (*id.* at ¶¶ 3, 8).

Cano, Jr. testified that he became aware that La Leyenda had signed with the Chavez Brothers in or around the summer of 2015, when the parties to the Chavez Brothers Contract announced the event on social media. (Dkt. No. 67, Exh. 2 at p. 58). Robles attests that by that time, La Leyenda had filed a criminal complaint against Cano with the Attorney General of the State of Nuevo Leon, Mexico, complaining of the alleged alteration of the Serca-Mexico Contract, which led to a criminal investigation. (Dkt. No. 66, Exh. 12 at ¶ 8).[9] Civil litigation also ensued in Mexico, with La Leyenda on one side and Cano and Care or Serca-Mexico on the other. *See* (Dkt. No. 58, Exh. A; *id.*, Exhs. 16-18).[10] Sultana, as alleged assignee of Care's contractual rights under the Care Contract, also sued La Leyenda in state court in Harris County, Texas, alleging breach of contract, among other claims. (Dkt. No. 66, Exh. 10 at pp. 1-17). Upon removal to the

---

[9] Robles attests that La Leyenda filed the criminal complaint on July 23, 2015. (Dkt. No. 66, Exh. 12 at ¶ 8).

[10] The litigation with Serca-Mexico resulted in the above-discussed Amparo Judgment, attached to Serca's live pleading, to which Plaintiffs cite. (Dkt. No. 58, Exh. A).

U.S. Southern District of Texas, Houston Division, the district court dismissed the suit on forum non conveniens grounds, finding that Sultana, who stood in the shoes of Care in seeking to enforce rights originating from the Care Contract, was bound by that contract's mandatory forum selection clause requiring that suit be brought in Monterrey, State of Nuevo Leon, Mexico.  (*Id.* at pp. 33-44).  The Fifth Circuit affirmed the dismissal.  *Sultana Entm't, LLC v. Gutierrez*, 752 F. App'x 203 (5th Cir. Feb. 12, 2019).  The forum selection clause in the Care Contract has an identical counterpart in the Serca-Mexico Contract, both of which state as follows:

> For interpretation or compliance purposes or any other circumstance in connection to this agreement, the parties agree being subject to the laws of the State of Nuevo Leon, Mexico and to the Jurisdiction and Competence of the Court of Monterrey, N.L., waiving any other venue which could correspond to them by reason of its present or future address.

(Dkt. No. 66, Exh. 9 at p. 33; Exh. 10 at p. 39).

During the pendency of the Sultana litigation, the Mexican courts determined that the date of execution of the Care and Serca-Mexico Contracts had been altered, and that the actual date of signing was February 15, 2011 (rather than 2010, as originally maintained by La Leyenda).  *See* (Dkt. No. 58, Exh. A at p. 49; Dkt. No. 66, Exh. 17 at pp. 124-26).  The Mexican courts also held that, even after expiration of the five-year term of the Serca-Mexico Contract in 2016, La Leyenda remained obligated to create two additional albums for Serca-Mexico pursuant to "what was agreed in the sixth clause of the [Serca-Mexico Contract]."  (Dkt. No. 58, Exh. A at p. 37; Dkt. No. 66, Exh. 12 at ¶ 12).  As discussed in this Court's previous order,[11] the sixth clause contains the parties' agreement that La Leyenda would record, during the term of the contract: five new and unreleased albums with a minimum of 10 musical selections that are unreleased, already released, or covers; and one live record with at least 10 musical selections.  (Dkt. No. 58, Exh. A at p. 49; Dkt. No. 66, Exh. 9 at p. 26).  Since La Leyenda was found to have recorded only four albums,

---

[11] *See* (Dkt. No. 38 at pp. 11-12).

one of which did not comply with the contract, by judgment it remained obligated to record two more.  *See* (Dkt. No. 58, Exh. A at pp. 54-56).  By order dated February 3, 2021, a Mexican court formally recognized La Leyenda's compliance with its adjudged obligations, and Claudia acknowledged in her deposition that all of La Leyenda's contractual obligations to Serca-Mexico have now been fulfilled.  (Dkt. No. 66, Exh. 16; Dkt. No. 67, Exh. 4 at p. 22).[12]

The Chavez Brothers and Robles attest that since the singing of the Chavez Brothers Contract, the parties to the contract have collaborated to record 12 new songs and various music videos—what Plaintiffs refer to as "the subject media" at issue in this case.  (Dkt. No. 66, Exh. 12 at ¶ 12; Exh. 13 at ¶¶ 6-8; Dkt. No. 67, Exh. 7 at pp. 32-34).  According to the Chavez Brothers, Remex produced the subject media and is the owner of the copyrights for the music videos.  (Dkt. No. 66, Exh. 13 at ¶ 8; Dkt. No. 67, Exh. 7 at pp. 32-34).  German attests that the Chavez Brothers utilized Remex, as well as Midas, to distribute and monetize the subject media by uploading the songs and videos onto online digital platforms such as YouTube, Spotify, and iTunes.  (Dkt. No. 66, Exh. 13 at ¶ 8).  When they did so, Serca began submitting DMCA takedown notices claiming copyright ownership of the artistic works used in the videos, which resulted in the removal of the subject media from these platforms, and consequently, the loss of revenue to Plaintiffs and royalties to La Leyenda.  *See* (*id.* at ¶¶ 9-14; Dkt. No. 67, Exh. 6 at pp. 42-43).

German's affidavit provides, more specifically, that Serca submitted the first round of takedown notices on July 25, 2016, resulting in the removal of five videos uploaded to Remex's YouTube channel.  (Dkt. No. 66, Exh. 13 at ¶ 9).  Remex sent DMCA counter-notices "to no avail," and YouTube issued a first "copyright strike" on Remex's channel.  (*Id.* at ¶¶ 9-11).  Sometime in early 2017, Remex uploaded another five La Leyenda music videos to its YouTube

---

[12]  In a similar order relating to the litigation between La Leyenda and Care, dated September 9, 2020, a Mexican court recognized La Leyenda's satisfaction of a separate judgment awarding monetary relief to Care.  *See* (Dkt. No. 66, Exh. 18).

channel, and in March 2017, Serca issued another takedown notice that caused YouTube to remove the videos and resulted in a second copyright strike against Remex. (*Id.* at ¶ 14). It is German's understanding that "[i]f three copyright strikes are accumulated, YouTube can terminate the account, along with any associated channels, delete all videos uploaded by the account, and prohibit the channel owner from creating new channels." (*Id.* at ¶ 11). According to German, the strikes against Remex "created the threat that Remex would lose its ability to use YouTube altogether as a revenue source for any or all of its artists[.]" (*Id.* at ¶ 14). Meanwhile, on February 24, 2016, Midas had contracted with third-party Select-O-Hits to distribute and monetize the La Leyenda songs recorded for and produced by the Chavez Brothers. (*Id.* at ¶ 12). After Select-O-Hits uploaded three of the songs to Spotify and iTunes, Serca submitted DMCA takedown requests to each platform on March 14, 2017 and March 17, 2017, respectively, and Spotify and iTunes removed the songs. (*Id.*). The takedown notices and strikes prompted Plaintiffs' filing of this suit, in which they allege that their right to benefit from the subject media "has been effectively hijacked" by Serca. (Dkt. No. 10 at ¶ 13).

## B.     Serca's Evidence

Relying in part on Plaintiffs' evidence and in part on its own submissions, Serca provides the following factual background in response to Plaintiffs' Motions, and in support of its own. *See* (Dkt. No. 72 at pp. 12-17). Serca cites to the following, third clause of the Serca-Mexico Contract as evincing Serca-Mexico's agreement with La Leyenda[13] "to exclusively own and control the recording rights of the group":

---

[13]  The Serca-Mexico Contract refers to Serca-Mexico as "SERCA" and La Leyenda as "THE ARTIST." (Dkt. No. 66, Exh. 9 at p. 18).

**THIRD. – EXCLUSIVITY:**

In consideration of the exclusivity stipulated in this agreement. "THE ARTIST " hereby confirms, affirms and guarantees to "SERCA" the unconditional, unlimited and total exclusivity on every performance and interpretation susceptible to be fixed and/or incorporated in PHONOGRAMS and/or VIDEOS and/or DVDS and/or DUAL DISC and/or LIVE RECORDINGS and/or any other technological means known or to be developed in the future, and/or any other sound fixed to any MECHANICAL FORMAT, in the TERRITORY, during the term of this agreement, the modifications, renewals and extensions thereof, if any.

"THE ARTIST" grants the unique and exclusive authorization to "SERCA", to allow and/or to authorize and/or to deny and/or to prohibit in the TERRITORY the reproduction, inclusion in publicity, audiovisual synchronization, use, sale by means of satellite transmission and/or in web sites in Internet, mobile telephony, or any other form of use or exploitation of the PHONOGRAMS and/or VIDEO and/or DVDS and/or DUAL DISC and/or LIVE RECORDINGS and/or any other technological means known or to be developed in the future, photography, voice with track or without track, derived from the AGREEMENT, without prior warning or authorization of "THE ARTIST".

"THE ARTIST" is committed during the term of this agreement (and of its modifications, renewals and extensions, if any) not to make for itself or for a third party, individually or jointly, any type of interpretation and/or activities identical and/or similar and/or related to the activities stipulated in this agreement, without the prior authorization in writing of "SERCA".

Upon authorization in writing of "SERCA", "THE ARTIST" will be able to use musical interpretations of the rights corresponding to "SERCA", to be included in videographic performances, cinematographic films, short films, electronic transcriptions of commercial advertisements or any interpretation by cable or public-access television, as long as these performances occur with purposes of commercialization, sale or rent, directly by "THE ARTIST" or a third party different from "SERCA" and/or its affiliates.

Without the express authorization of "SERCA", it is strictly prohibited that any of the MUSICAL SELECTIONS interpreted under protection of this agreement, will be published, reproduced, distributed, adapted, or fixed, by means of any phonographic, sonorous or audio-visual process known or to be invented in the future, for exploitation, sale, rent or donation of units to the public in the TERRITORY by "THE ARTIST" and/or by a third party appointed by "THE ARTIST".

In the event of violation to any of the preceding paragraphs, "THE ARTIST" will immediately pay, in a term not greater than 30 (thirty) calendar days, the amounts that "SERCA" considers appropriate for damages that it could have caused to "SERCA".

(Dkt. No. 66, Exh. 9 at pp. 24-25).  Through submission of an "Exclusive and Temporary License Agreement" with Serca ("Serca Contract"), as well as testimony of the Cano family, Serca identifies itself as the Texas record company that "has always distributed La Leyenda's recordings in the United States" despite the absence of any direct contract with the group.  *See* (Dkt. No. 67, Exh. 1 at p. 18; Exh. 2 at pp. 15-16, 29-30; Exh. 4 at pp. 28, 32, 34-35, 46-47, 49-50; Exh. 11).  In essence, the cited testimony reflects the Cano family's treatment of any recording contract obtained by Serca-Mexico, owned by Cano, as giving Serca, also owned by Cano and managed by

Cano, Jr., rights of distribution in the United States.  Based on this understanding, Serca-Mexico and/or Serca entered into a series of agreements with Select-O-Hits to distribute La Leyenda's music in the United States.  (Dkt. No. 73, Exh. A).

Serca supplies a missing piece of the record by submitting the initial judgment from which the Amparo Judgment arose: a Mexican court's final judgment, dated September 4, 2017, in which that court found that La Leyenda had breached the third "exclusivity" clause of the Serca-Mexico Contract in connection with the album "Diez Mas Diez" recorded for Remex and the song "Ponte de Modo" "publicized" by Remex in 2015.  (Dkt. No. 72, Exh. B at p. 80).  The court found that the Serca-Mexico Contract had been executed on February 15, 2011, such that it was "valid" through 2016, and ordered La Leyenda to record one additional album for Serca-Mexico "according to what was agreed in the Sixth Clause" of the contract.  (*Id.* at pp. 122, 124, 135).  The Amparo Judgment reflects that La Leyenda was eventually ordered to record two new albums rather than one, again pursuant to the parties' agreement in the sixth clause.  *See* (*id.*, Exh. C at pp. 44-45).  As discussed in this Court's prior order,[14] it appears that La Leyenda sought relief from underlying rulings through a direct amparo proceeding, but the Amparo Judgment entered on June 6, 2018 denied such relief, agreeing that the Serca-Mexico Contract had been executed on February 15, 2011, that La Leyenda had failed to comply with the contract's sixth clause, and that two albums remained pending.  (*Id.* at pp. 43-45, 57, 64-65).  The Amparo Judgment further specified that "while the terms of the contract are not complied with, the contract shall remain in full force and effect for the parties."  (*Id.* at p. 65).[15]

---

[14]  *See* (Dkt. No. 38 at pp. 10-12).

[15]  To the extent that Serca relies on it, the Court sustains Plaintiffs' objection to Cano, Jr.'s sworn statement that the Mexican judgments "upheld" the Serca-Mexico Contract, both because the statement is conclusory and the judgments themselves constitute the best evidence of what they contain.  *See* (Dkt. No. 73, Exh. G at ¶ 4; Dkt. No. 76 at ¶ 2); FED. R. EVID. 1002.

**III.    Plaintiffs' Rule 12(b) Motion to Dismiss**

**A.    Rule 12(b)(1)**

**1.    Serca's Standing to Bring Counterclaims**

The Court begins with Plaintiffs' challenges to the Court's subject-matter jurisdiction under Rule 12(b)(1), first among them Plaintiffs' "factual attack" against Serca's standing to sue: Plaintiffs assert that "[a]ll of Serca's claims and requests for relief are premised on it possessing certain contractual rights in the name 'La Leyenda' and in La Leyenda's artistic work," and that Plaintiffs' summary judgment evidence defeats the premise.  (Dkt. No. 66 at ¶¶ 15, 16); *see* FED. R. CIV. P. 12(b)(1); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."); *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (attack on standing is "factual" rather than "facial" if movant submits evidence outside the pleadings).   Whether Plaintiffs mean to challenge Serca's Article III constitutional standing or prudential standing to sue,[16] they correctly observe that "[t]o defeat a factual attack, a [nonmovant] must prove the existence of [standing] by a preponderance of the evidence and is obliged to submit facts through some evidentiary method to sustain [its] burden of proof."  *Superior MRI Servs.*, 778 F.3d at 504 (quoting *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989), *aff'd sub nom. Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990)) (internal quotation marks omitted); (Dkt. No. 66 at ¶ 15).

---

[16]  "[S]tanding jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction'" such as "'the general prohibition on a litigant's raising another person's legal rights.'"  *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 801 (5th Cir. 2012) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11-12 (2004)).

Plaintiffs' factual attack on Serca's assertion of contractual rights derives support from the affidavit and deposition of Robles, La Leyenda's founding member and lead vocalist, identifying himself as the owner of all trademark rights in the name "La Leyenda," as registered in the United States and Mexico.  (Dkt. No. 66 at ¶ 16, Exh. 12 at ¶¶ 2-4; Dkt. No. 67, Exh. 14 at p. 4, Exh. 9). Plaintiffs also point to the deposition testimony of Cano, Jr., Serca's vice-president and operations manager, that Serca never directly contracted with or recorded songs for La Leyenda, and that he had no memory of receiving an assignment of rights from Serca-Mexico.  (Dkt. No. 66 at ¶ 16; Dkt. No. 67, Exh. 2 at pp. 15-16, 24, 29, 89).  On these bases, Plaintiffs make the global assertion that "Serca lacks standing to pursue its counterclaims and to seek its requested relief[.]"  (Dkt. No. 66 at ¶ 16).  Serca's response does not dispute Robles's trademark rights, or claim the existence of a contract with La Leyenda, but argues that Plaintiffs' evidence consisting of the Serca-Mexico Contract, Serca Contract, and testimony from the Cano family establishes Serca-Mexico's and Serca's coexisting "rights to La Leyenda's sound recordings, copyrights, and trademarks during the contract period and, of course, the right to enforce these rights," and also that Serca-Mexico "had the right to—and did—assign its rights" to Serca.  (Dkt. No. 72 at p. 23; *see* pp. 24-29; Dkt. No. 66, Exh. 9; Dkt. No. 67, Exhs. 1, 2, 4, 11).[17]

To resolve the parties' arguments, the Court first identifies the claimed rights of ownership, as well as the means by which those rights may be transferred or used, utilizing federal law as the frame of reference.  The "sound recordings" to which Serca refers are one of eight categories of "works" extended federal copyright protection under the Copyright Act.  17 U.S.C. § 102(a)(7). "Musical works" are a separate category, consisting of "the notes and lyrics of the song[s] as they appear on sheet music," whereas sound recordings are recorded musical works.  *Id.* § 102(a)(2);

---

[17]  In asserting its standing, Serca does not appear to rely on Cano, Jr.'s characterization of the rights assigned under the Serca Contract, as set forth in his sworn declaration.  *See* (Dkt. No. 73, Exh. G at ¶ 2). However, to the extent it does, the Court sustains Plaintiffs' objection to this characterization, as the contract itself is the best evidence of what it contains.  *See* (Dkt. No. 76 at ¶ 2); Fed. R. Evid. 1002.

*Recording Indus. Ass'n of Am., Inc. v. Library of Cong.*, 608 F.3d 861, 863 (D.C. Cir. 2010).[18]

Relevant to the present case, the distinction has been summarized as follows:

> When an artist writes a song, the artist owns the copyright to that song. 17 U.S.C. § 201(a). …. However, when that song is recorded, there is a separate copyright in the performance of the song. *Jordan v. Sony BMG Music Entm't, Inc.*, 637 F. Supp. 2d 442 (S.D. Tex. 2008) ("Under the Copyright Act, sound recordings (in this case, the fixation of the combined music and lyrics) and the underlying musical compositions are separate works with distinct copyrights"). When an artist enters into a contract with a record label, the performance generally does not exist. The record label pays for the cost of creating the performance, including an advance to the artist, payment of the musicians who perform the song and payment of the costs of creating the master recording. In return, the artist agrees that the copyright to the performance (as opposed to the words and music themselves) belongs to the record label. The master is the embodiment of the performance on tape or digital image which can be used to produce compact discs or digital downloads for sale to the public. Because the record label pays for the creation of the master, record contracts provide that the master belongs to the label. More importantly, the copyright for the performance belongs to the label as well.

*In re Antone's Recs., Inc.*, 445 B.R. 758, 779 (Bankr. W.D. Tex. 2011); (Dkt. No. 72 at p. 40). A copyright gives the owner the exclusive rights to: (1) reproduction; (2) preparation of derivative works; (3) distribution; (4) public performance; (5) public display; and (6) in the case of sound recordings, digital audio transmission. 17 U.S.C. §§ 106, 201(a); *see also In re Antone's Recs., Inc.*, 445 B.R. at 779; (Dkt. No. 72 at pp. 24-25). Each of these rights may be transferred in whole or in part by the owner, whether by "assignment…, exclusive license, or any other conveyance[.]" 17 U.S.C. §§ 101, 201(d); *In re Antone's Records*, 445 B.R. at 779.

Separate from copyrighted works are "trademarks" and "service marks" afforded federal protection under the Lanham Act, which defines these terms as "any word, name, symbol, or device, or any combination thereof," used to identify and distinguish goods (trademarks) and services (service marks) (collectively, "marks") from those of another. 15 U.S.C. § 1127. Registration of a mark with the U.S. Patent and Trade Office "shall be prima facie evidence of the

---

[18]  Specifically, the Act defines sound recordings as "works that result from the fixation of a series of musical, spoken, or other sounds…, regardless of the nature of the material objects, such as disks, tapes, or other phonorecords, in which they are embodied." 17 U.S.C. § 101.

validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein[.]"  *Id.* § 1115(b); *see also* § 1057(b).  The owner of a mark may license or consent to another's use of the mark while retaining ownership of it.  *See ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 598 (5th Cir. 2003) (quoting *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 882 (7th Cir. 1997)); *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1076 (5th Cir. 1997); 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 18:79 (5th ed. 2021).

With respect to Serca's claimed ownership of "rights to La Leyenda's sound recordings [and] copyrights," the parties' dispute over standing turns on a narrow issue: whether such rights, if owned by Serca-Mexico, also belong to Serca.  In asking the Court to resolve the issue in its favor, Serca principally cites to the following paragraphs contained in the Serca-Mexico Contract's second clause, entitled "Purpose":

> Additionally, "THE ARTIST" agrees and exclusively authorizes, in all the TERRITORY and without limitation, "SERCA" and/or its Affiliates and/or "SERCA" designees (verbally or in writing) to use, to record, to display, to distribute, to rent, to market, to reproduce, to transmit, (in any format, including, but without limited to analog, digital or electronic formats, transmitted by cable or satellite, and any other broadcasting form known or to be invented in the future), to adapt, to compile or to modify, the ALBUMS resulting from the referred PHONOGRAMS and/or VIDEOS and/or DVDS and/or DUAL DISC and/or the LIVE RECORDINGS, and/or any other technological means known or to be developed in the future, as well as of the UNITS reproduce based on thereof, offering to "SERCA" the legal protections and credits corresponding to "THE ARTIST".

> By virtue of the foregoing, the ALBUMS, PHONOGRAMS, VIDEOS, DVDS, DUAL DISC, LIVE RECORDINGS, and any other technological means known or to be developed in the future, like all the rights arising therefrom, will be exclusive property of "SERCA", upgrading consequently the exhaustion of the rights referred to in Article 118 of the Federal Law on Copyright effective in the United Mexican States.

(Dkt. No. 72 at pp. 23-24; Dkt. No. 66, Exh. 9 at pp. 23-24).  Serca complains that Plaintiffs "pretend[ ] that this contract language does not exist," to which Plaintiffs respond that Serca

ignores the preceding paragraph—the first of the three paragraphs comprising the second clause—which states as follows:

> "THE ARTIST" commits itself to exclusively interpret for "SERCA" any piece of music, consisting of lyrics or music or both, "MUSICAL SELECTIONS", according to the provisions in fourth clause herein, in order that they are fixed and incorporated to the PHONOGRAMS and/or VIDEOS and/or DVDs and/or DUAL DISC and/or LIVE RECORDINGS and/or any other technological means known or to be developed in the future, produced by "SERCA".

(Dkt. No. 72 at p. 24; Dkt. No. 78 at ¶ 4; Dkt. No. 66, Exh. 9 at p. 23).  Plaintiffs take the position that "[w]hen all three paragraphs are read together, as they should be, it is clear that the [Serca-Mexico] Contract only contemplates [Serca-Mexico] assigning its affiliates and designees certain rights in artistic content 'produced by [Serca-Mexico].'"  (Dkt. No. 78 at ¶ 4).  However, the Court fails to locate in this language, much less in the contract as a whole, an agreement to so limit the rights of Serca-Mexico's affiliates.  In the paragraph cited by Plaintiffs, La Leyenda agrees to "exclusively interpret for [Serca-Mexico] any piece of music, consisting of lyrics or music or both," in order that these "MUSICAL SELECTIONS"[19] may be fixed in sound recordings produced by Serca-Mexico, without excluding musical selections fixed in sound recordings produced by third parties from the reach of the contract.  The second clause goes on to exclusively authorize, "in all the TERRITORY[20] and without limitation," Serca-Mexico's "Affiliates and/or…designees (verbally or in writing)" to use and in relevant part, distribute and transmit by digital format the "ALBUMS"[21]  resulting from the sound recordings covered by the contract, and consistent with the Cano family's understanding, other portions of the contract treat Serca-Mexico's rights and obligations as extending to its affiliates.  *See* (Dkt. No. 66, Exh. 9 at pp. 22, 24-26, 28-29, 31).  To the extent that Serca-Mexico has an ownership interest in the subject media,

---

[19] "MUSICAL SELECTIONS" are defined, in relevant part, as "[a]ny musical piece consisting of lyrics or music or both, interpreted by [La Leyenda], no matter that it has been or not previously published and which is fixed in a phonogram[.]"  (Dkt. No. 66, Exh. 9 at p. 22).
[20] "TERRITORY" is defined as "all around the world," and therefore includes Serca's U.S. distribution territory.  (*Id.*).
[21] "ALBUM" is defined as "a phonogram which includes at least (10) musical selections."  (*Id.* at p. 20).

its rights extend to Serca without the limitation urged by Plaintiffs.  The contractual source of Serca's standing is, however, limited to the Serca-Mexico Contract, as the Court otherwise agrees with Plaintiffs that the Serca Contract merely affords Serca certain rights relating to "the artists in Annex 1," which annex is absent from the record.  (Dkt. No. 78 at ¶ 5; Dkt. No. 67, Exh. 11 at p. 18).  Also, the Serca Contract was executed on September 27, 2017, and states that it is effective for one year, such that it could not have afforded Serca any interest in the subject media prior to the date of execution, or after the contract term expired.  (Dkt. No. 78 at ¶¶ 6, 7; Dkt. No. 67, Exh. 11 at p. 23).  The Serca-Mexico Contract and Cano family testimony, but not the Serca Contract, constitute evidence sufficient to defeat Plaintiffs' challenge to Serca's standing to sue for interference with Serca-Mexico's claimed rights of ownership.

Serca does *not* claim ownership of the mark "La Leyenda," as federally registered by Robles as both a trademark and service mark in 2014, but claims standing to sue as a nonowner by virtue of the Lanham Act's authorization of suit by "any person who believes that he or she is or is likely to be damaged" by unfair competition in violation of the Act.  15 U.S.C. § 1125; *see* (Dkt. No. 67, Exh. 14 at Exh. 9; Dkt. No. 72 at pp. 25-26).  In further support of its position, Serca cites to *Norman M. Morris Corp. v. Weinstein*, 466 F.2d 137 (5th Cir. 1972), in which a company granted the exclusive rights to purchase goods bearing another company's federally registered trademark, then sell them in the United States, prevailed on its Lanham Act unfair competition claim against an individual who purchased goods bearing the same trademark but no identifying serial numbers, and sold them in the same market.  (Dkt. No. 72 at pp. 26-28); *see Weinstein*, 466 F.2d at 139-40, 142-43.  Serca contends that similarly, Plaintiffs contracted to obtain master sound recordings from La Leyenda in violation of the Serca-Mexico Contract, "and turned around and sold them as genuine."  (Dkt. No. 72 at p. 28).  Thus, "under its exclusive rights to administer [Serca-Mexico's] rights in the United States—including with respect to the ["La Leyenda" mark]," Serca has

standing to sue.  (*Id.*).  Plaintiffs' reply offers no contest, and the Court accepts the asserted basis for standing.  The fifth clause of the Serca-Mexico Contract explicitly authorizes Serca-Mexico's and its affiliates' use of La Leyenda's trademarks in connection with the rights granted under the contract, such that Serca may challenge Plaintiffs' use of the trademarks in alleged contravention of those rights.  *See* (Dkt. No. 66, Exh. 9 at p. 26).

## 2.    Mootness

Plaintiffs' Motion also invokes Rule 12(b)(1) to seek dismissal of Serca's requests for declaratory and injunctive relief as moot, arguing that these requests are "predicated on La Leyenda having ongoing contractual obligations to [Serca-Mexico]," but  "no such obligations exist today."  (Dkt. No. 66 at ¶ 17).  "Mootness is the doctrine of standing in a time frame"; "[t]he requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)."  *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008) (quoting *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006)) (internal quotation marks omitted).  As Serca observes, the general rule is that "any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot."  *Envtl. Conservation Org.*, 449 F.3d at 526 (quoting *Carmouche*, 449 F.3d at 661); (Dkt. No. 72 at p. 30).  "A case should not be declared moot '[a]s long as the parties maintain a concrete interest in the outcome and effective relief is available to remedy the effect of the violation'" at issue.  *Envtl. Conservation Org.*, 449 F.3d at 526 (quoting *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998)) (some internal quotation marks omitted); (Dkt. No. 72 at p. 30).

Serca asks for a declaratory judgment that it maintains the exclusive rights to La Leyenda's master sound recordings made pursuant to the Chavez Brothers Contract, which is void and unenforceable, as well as an injunction against Plaintiffs' exercise of any such rights.  (Dkt. No.

58 at Counts 1, 11).  In challenging these requests for prospective relief as moot, Plaintiffs take the position that Serca's rights to the subject media, if any, ended when La Leyenda recorded the two additional albums required by the Mexican courts.  (Dkt. No. 66 at ¶¶ 12, 17).  Serca responds by asserting that if the Court "adopts [the Mexican judgments] based on comity, this would establish that the Plaintiffs had [and have] no right to upload La Leyenda's music on any platform" at any point in time.  *See* (Dkt. No. 72 at pp. 30-31).  Since the question of whether Serca ever held exclusive rights to the La Leyenda/Remex master sound recordings addressed by the Mexican judgments is *the* merits question on which the parties' competing claims turn, and since resolution of this question also implicates whether Serca continues to hold such rights, the Court must "assume jurisdiction and proceed to the merits."  *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004).  Whether Serca retains exclusive rights to the subject media past the date of the Serca-Mexico Contract's fulfillment remains a live controversy in which the parties maintain an interest, and if resolved in Serca's favor, renders prospective relief appropriate.  Plaintiffs' request for dismissal under Rule 12(b)(1) must be denied in full.

## B.    Rule 12(b)(7)

Plaintiffs next seek to dismiss Serca's counterclaims under Rule 12(b)(7), which permits dismissal for failure to join a party under Rule 19, asserting that La Leyenda is an indispensable party to this action.  (Dkt. No. 66 at pp. 12-15); *see* FED. R. CIV. P. 12(b)(7).  As Plaintiffs observe, Rule 19 "requires a two-step inquiry that is a highly-practical, fact-based endeavor."  *Rajet Aeroservicios S.A. de C.V. v. Castillo Cervantes*, 801 F. App'x 239, 246 (5th Cir. 2020) (quoting *Hood ex rel. Miss. v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009)) (internal quotation marks omitted).  First the court must determine whether a missing party is a "necessary" one under Rule 19(a), which requires joinder if, in relevant part, "the court cannot accord complete relief among existing parties" or "that person claims an interest relating to the subject of the action and is so

situated that disposing of the action in the person's absence may…as a practical matter impair or impede the person's ability to protect the interest." FED. R. CIV. P. 19(a)(1)(A), (B)(i); *see Hood*, 570 F.3d at 628. If a party is necessary and cannot be joined, the court must then determine whether that person is "indispensable" under Rule 19(b)—that is, "whether in equity and good conscience, the action should proceed among the existing parties or should be dismissed"—upon consideration of the following factors: (1) "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties"; (2) "the extent to which any prejudice could be lessened or avoided by" protective provisions in the judgment, shaping the relief, or other measures; (3) "whether a judgment rendered in the person's absence would be adequate"; and (4) "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." FED. R. CIV. P. 19(b); *see Hood*, 570 F.3d at 629.

Plaintiffs bear the initial burden of demonstrating that La Leyenda is a necessary party, *see Hood*, 570 F.3d at 628, and attempt to do so by pointing to La Leyenda's status as party to the Chavez Brothers Contract challenged by Serca's counterclaims. *See* (Dkt. No. 66 at ¶¶ 19-21); 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1613 (3d ed. 2021) (in cases challenging validity of contract, "all parties to the contract usually will have a substantial interest in the outcome of the litigation and their joinder will be required"); *Altava Health Mktg., Ltd. v. Shortgrass, Inc.*, 2005 WL 2277598, at *9 (S.D. Tex. Sept. 15, 2005) ("Federal courts consistently hold that a party to an agreement in dispute is [a party who must be joined under Rule 19(a)] in a suit seeking to rescind, annul, or interpret that agreement.") (citing cases). To the extent that Serca seeks to declare the Chavez Brothers Contract void, to enjoin Plaintiffs' exercise of rights granted by that contract,[22] and to disgorge all earnings resulting from the exercise of such

---

[22] Serca's requests for injunctive relief appear in its declaratory judgment, Lanham Act, and injunction counts. *See* (Dkt. No. 58 at ¶¶ 39-41, 53, 77-80).

rights,[23] La Leyenda also stands to lose its contractual rights.  *See* (Dkt. No. 66 at ¶¶ 20, 21).  In

addition, the Court accepts Plaintiffs' more generalized argument that "La Leyenda has an interest

in all of Serca's counterclaims because the Court cannot grant relief on any one" without

determining that the Chavez Brothers Contract "does *not* bestow to the participating parties all the

rights expressed and contemplated therein."  (*Id.* at ¶ 21) (emphasis added).  However, for reasons

set forth in Serca-Mexico's response and herein, it does not automatically follow that La Leyenda's

absence from the action would impair its ability to protect its contractual rights, as it was given

that ability in the Mexican litigation now concluded.  *See* (Dkt. No. 72 at pp. 34-37).  As discussed

more fully *infra*, the September 2017 judgment now reveals that the Mexican litigation resolved

the issue of whether La Leyenda's sound recordings produced by Remex breached the third

"exclusivity" clause of the Serca-Mexico Contract, which determination is conclusive not only as

against La Leyenda but also Plaintiffs, and resolves the dispositive question of Serca-Mexico's

(and therefore Serca's) rights to the subject media.  All that remains for this Court to adjudicate is

the extent to which Plaintiffs may be held liable to Serca for interfering with those rights, in which

case the Court can accord complete relief among the existing parties.  *See* (*id.* at p. 33).  Even

assuming that it could not, and that La Leyenda is a necessary party, the four Rule 19(b) factors

counsel against finding that La Leyenda is an indispensable party, for the following reasons: (1)

the conclusive effect of the Mexican judgments disposes of any prejudice to La Leyenda or

Plaintiffs if the Court should proceed without the former; (2) to the extent that Serca's requests for

relief tread on matters not adjudicated, the Court retains the ability to guard against prejudice by

limiting such relief; (3) honoring the conclusive effect of the Mexican judgments as they relate to

Serca's counterclaims and Plaintiffs' DMCA claim in a single suit would serve the "public stake

in settling disputes by wholes, whenever possible," and render any resultant judgment

---

[23] This request appears in Serca's unjust enrichment count.  *See* (Dkt. No. 58 at ¶ 67).

"adequate";[24] and (4) as discussed more fully *infra*, even the availability and adequacy of a Mexican forum does not warrant dismissal in deference to that forum.  *See* (*id.* at pp. 34-38). Plaintiffs' final request for Rule 12(b) relief must be denied.

## IV.    Plaintiffs' Motion to Dismiss for Forum Non Conveniens

Plaintiffs next move to dismiss Serca's counterclaims on grounds of forum non conveniens, claiming that Mexico—in particular, Monterrey, State of Nuevo Leon—is the appropriate forum. (Dkt. No. 66 at ¶¶ 23-26).  As the Houston district court observed in Sultana's federal suit against La Leyenda, which was dismissed on these grounds, dismissal is typically warranted if the movant shows "(1) the existence of an available and adequate forum and (2) that the balance of relevant private and public interest factors favor dismissal."  (*Id.*, Exh. 10 at p. 35); *Moreno v. LG Elecs., USA Inc.*, 800 F.3d 692, 696 (5th Cir. 2015).  A forum is "available" if the nonmovant's case and the parties to it can come within the forum's jurisdiction, and is "adequate" if the nonmovant will not be deprived of all remedies or treated unfairly, even though it may not enjoy the same benefits as it might receive in a court of the United States.  (Dkt. No. 66, Exh. 10 at pp. 35-36); *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003).  "The factors pertaining to the private interests of the litigants include: (1) the ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the possibility of a view of the premises, if appropriate; and (5) any other practical factors that make trial expeditious and inexpensive."  (Dkt. No. 66, Exh. 10 at p. 36); *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 213 (5th Cir. 2010).  "The public interest factors include: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of

---

[24]  *See Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 111 (1968) (setting forth test for third Rule 19(b) factor).

unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty.'"  (Dkt. No. 66, Exh. 10 at p. 36); *Saqui*, 595 F.3d at 214.

The Fifth Circuit has observed that its "many decisions create a nearly airtight presumption that Mexico is an available forum," and has repeatedly held that this forum is also adequate, "despite differences in Mexican and American substantive and procedural law." *Moreno*, 800 F.3d at 699 (5th Cir. 2015) (quoting *In re Ford Motor Co.*, 591 F.3d 406, 413 (5th Cir. 2009)); *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 796-97 (citing cases).  Serca's response avoids disputing these criteria; instead, it devotes its response to contesting Plaintiffs' application of the private and public interest factors.  *See* (Dkt. No. 66 at ¶¶ 24, 25; Dkt. No. 72 at pp. 18-23).

In addressing these factors, Plaintiffs argue, in part, that Serca's counterclaims require the Court to apply Mexican law and to "interpret the [Serca-Mexico Contract]—a contract with a mandatory forum selection clause that only permits Nuevo Leon courts to resolve differences in contractual interpretation." (Dkt. No. 66 at ¶ 25).  Plaintiffs, as well as Serca, appear to overlook— but the Houston court did not—that a mandatory, enforceable forum selection clause changes the typical forum non conveniens analysis; where such a clause is at issue, the nonmovant's "choice of forum merits no weight," the burden falls upon the nonmovant to establish that deference to the selected forum is unwarranted, and the court may not consider the private interest factors, as they are deemed to "weigh entirely in favor of the preselected forum."  (*Id.*, Exh. 3 at p. 37; *see also* pp. 38-42); *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63-64 (2013).  Cases in which the public interest factors will outweigh a valid forum selection clause are not common.  (Dkt. No. 66, Exh. 10 at p. 37); *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 767 (5th Cir. 2016).  Again, the Care and Serca-Mexico Contracts share the same forum selection clause, which provides as follows:

> For interpretation or compliance purposes or any other circumstance in connection to this agreement, the parties agree being subject to the laws of the State of Nuevo Leon, Mexico and to the Jurisdiction and Competence of the Court of Monterrey, N.L., waiving any other venue which could correspond to them by reason of its present or future address.

(Dkt. No. 66, Exh. 9 at p. 33; Exh. 10 at p. 39).   In the absence of any argument to the contrary, the Court adopts the Houston court's determination, affirmed by the Fifth Circuit, that the clause is mandatory.   *See* (*id.*, Exh. 10 at pp. 38-41); *Sultana Entm't, LLC*, 752 F. App'x at 204.   For the reasons stated by the Houston court, the clause is also enforceable against Serca.   *See* (Dkt. No. 66, Exh. 10 at pp. 41-42).   Like Sultana, Serca stands in the shoes of the contracting party, here Serca-Mexico, in seeking to enforce rights originating from the subject contract, and is bound by the forum selection clause contained therein.   *See* (*id.*).   Nonetheless, the Sultana and Serca cases differ in two notable respects: Serca endeavors to enforce the Serca-Mexico Contract's third "exclusivity" clause against Plaintiffs, who are nonsignatories to that contract, not against La Leyenda who entered into the clause; and as discussed more fully *infra*, litigation between the contracting parties, which applied the pre-selected law in the contractually chosen forum, has resulted in judgments that can be given conclusive effect.

The first of the distinctions is notable because Plaintiffs themselves assert a claim—for violations of the DMCA—that also turns on whether the exclusivity clause in the Serca-Mexico Contract precluded Plaintiffs' exercise of rights to the subject media.   Serca has not asked to dismiss Plaintiffs' DMCA claim on forum non conveniens grounds, yet as Serca emphasizes, its claims now asserted as being brought in an inconvenient forum are compulsory counterclaims to the DMCA claim, in that they "arise[ ] out of the transaction or occurrence that is the subject matter of the opposing party's claim" and "do[ ] not require adding another party over whom the court cannot acquire jurisdiction."   (Dkt. No. 72 at pp. 21-22); Fed. R. Civ. P. 13(a).   Serca's choice of forum was essentially mandated by Plaintiffs, who more than three years after filing suit, now seek to hold Serca to another, mandated choice while their own claim predicated on the very same issue

of contractual interpretation remains undisturbed.  "[T]he need—rooted in the valued public interest in judicial economy—to pursue the same claims in a single action in a single court can trump a forum-selection clause" that creates this dilemma.  *In re Rolls Royce Corp.*, 775 F.3d 671, 679 (5th Cir. 2014).

The second of the distinctions solidifies this course of action.  Plaintiffs' Motion asserts that the public interest factors favor dismissal because the counterclaims "require the Court to interpret the judgments and orders of Mexico courts," as well as Mexican law and the Serca-Mexico Contract, and Plaintiffs' reply expounds on why these "complicated matters" should be left to the Mexican courts.  (Dkt. No. 66 at ¶ 25; Dkt. No. 78 at ¶¶ 15, 16).  Notwithstanding that Plaintiffs' DMCA claim engages the same matters, the doctrine of international comity envisions federal courts interpreting foreign judgments, and as detailed *infra*, allows the Court to give conclusive effect to the Mexican judgments with respect to the issue at the heart of both sides' competing claims, therefore foreclosing any need to resolve complicated questions of Mexican law and contractual interpretation.  *See* (Dkt. No. 72 at pp. 20-21).  Plaintiffs do not argue that this case presents "administrative difficulties flowing from court congestion," and although this Court seconds the Houston court's observation that "[t]he Southern District of Texas is one of the busiest districts in the United States," the Court's ability to resolve the pivotal, disputed issue streamlines this long-pending litigation and counsels in favor of finally resolving it here, rather than in a Mexican forum in which protracted litigation between the parties to the Serca-Mexico Contract has already concluded.  (Dkt. No. 66, Exh. 10 at p. 43).  What remains are federal and state-law claims, in part as between two Texas entities (Midas and Serca), in which Monterrey, State of Nuevo Leon has no compelling, superior interest, and that this Court and its jurors are fairly suited to decide.  *See* (Dkt. No. 72 at pp. 20-21).  The Court will not dismiss Serca's counterclaims as brought in an inconvenient forum.

## V.   Plaintiffs' Rule 12(c) Motion for Judgment on the Pleadings

Plaintiffs' final Rule 12 challenge consists of their request, made pursuant to Rule 12(c), for a judgment on the pleadings on Serca's counterclaims for tortious interference with contract and prospective economic advantage, misappropriation, unjust enrichment, and accounting.  (Dkt. No. 66 at ¶¶ 44, 45); *see* FED. R. CIV. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.").  A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam)).  It is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6); thus, the central issue is whether, when construed in the light most favorable to the nonmovant, the complaint states a valid (i.e., plausible) claim for relief.  *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (quoting *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plaintiffs first target Serca's counterclaims for tortious interference, misappropriation, and unjust enrichment on the grounds that these claims, as pleaded, are subject to federal copyright preemption.  (Dkt. No. 66 at ¶ 44).  "Section 301 of the Copyright Act preempts state law claims that fall within the general scope of federal copyright law."  *Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 377-78 (5th Cir. 2020) (quoting *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 655 (5th Cir. 2017)).[25]  Consistent with the text of the statute, the Fifth

---

[25] Section 301(a) states, in relevant part, as follows:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether…published or unpublished, are governed exclusively by this title. Thereafter, no

Circuit uses a two-part test to determine whether the Act preempts a state-law cause of action. *Id.* at 378. First, a court must examine the claim to determine whether it falls "within the subject matter of copyright" as defined by 17 U.S.C. § 102. *Id.* If so, the court turns to whether the claim protects rights that are "equivalent to any of the exclusive rights within the general scope of copyright," as defined in 17 U.S.C. § 106. *Id.* "[I]n other words, is state law protecting the same rights that the Copyright Act seeks to vindicate, or is it protecting against different types of interference?" *Id.* (quoting *GlobeRanger Corp. v. Software AG United States of Am., Inc.*, 836 F.3d 477, 484 (5th Cir. 2016)). The court evaluates "equivalency" by applying the "extra element" test: if the state-law claim requires "one or more qualitatively different elements," the claim is not preempted. *Id.* (quoting *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 787 (5th Cir. 1999)). "The party arguing against preemption must show 'the presence of any element that renders different in kind its rights under state and federal law.'" *Id.* (quoting *Alcatel*, 166 F.3d at 789).

Serca pleads tortious interference consisting of Plaintiffs' interference with Serca's existing contracts and prospective business arrangements with Select-O-Hits and others to distribute La Leyenda's master sound recordings, misappropriation of those recordings via their unlawful distribution, and unjust enrichment resulting therefrom, all of which concern sound recordings within the subject matter of copyright under § 102. *See* (Dkt. No. 58 at Counts 2, 3, 9). In an effort to demonstrate the "equivalency" prong of the applicable test, Serca cites to authority recognizing Texas-law causes of action for tortious interference with existing contracts and prospective business relations, unfair competition by misappropriation, and unjust enrichment to fall within this prong. *See* (Dkt. No. 66 at ¶ 44); *WeInfuse, LLC v. InfuseFlow, LLC*, 2021 WL 1165132, at *5-6 (N.D. Tex. Mar. 26, 2021) (plaintiff's tortious interference claim premised on

---

person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).

allegations that defendants induced existing client to breach contract so that defendants could obtain access to software, develop derivative work, and target plaintiff's prospective clients was preempted, as it sought to protect rights equivalent to exclusive rights to prepare and reproduce derivative work); *Ultraflo*, 845 F.3d at 657 (reaffirming that "Texas's unfair competition by misappropriation cause of action does not afford protection materially different from federal copyright law") (citing *Alcatel*, 166 F.3d at 787-89) (internal footnote omitted); *Streat v. Jackson,* 2008 WL 11350195, at *5 (N.D. Tex. Dec. 28, 2008) (observing that "[t]he Copyright Act generally preempts claims for unjust enrichment," that "[p]reemption is appropriate when the core of the plaintiff's theory…relates to [the] defendant's use of the copyrighted material," and concluding that plaintiff's unjust enrichment claim premised on allegations that defendant used and allowed others to use her script without compensating her was preempted).  In response, Serca argues that the targeted counterclaims "have nothing to do with copyright infringement and everything to do with the Plaintiffs' interference with [Serca's] contracts and unjust enrichment resulting therefrom," without explaining how the two are mutually exclusive.  *See* (Dkt. No. 72 at pp. 55-56).  Serca's only other effort to contest preemption consists of a string-cite of cases purporting to demonstrate that "there is no pre-emption under the present facts," again without any accompanying explanation, and overlooking that the cited authority largely supports Plaintiffs' position.  (*Id.* at pp. 55-56); *GlobeRanger*, 836 F.3d at 482, 485-88 (holding that "trade secret misappropriation claim requires establishing an additional element than what is required to make out a copyright violation: that the protected information was taken via improper means or breach of a confidential relationship," without disturbing holding in *Alcatel* that "a claim for misappropriation under the Texas common law of unfair competition was preempted," and without reaching district court finding that tortious interference claim was preempted); *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990) (breach of contract claim not preempted,

but conversion claim appeared to be since it was premised on evidence that defendants used property by reproducing, distributing, and displaying it); *Recursion Software, Inc. v. Interactive Intel., Inc.*, 425 F. Supp. 2d 756, 769 (N.D. Tex. 2006) (plaintiff's unjust enrichment claim subject to general rule that such a claim is preempted "to the extent [it is] based on a defendant's violation of an exclusive right protected by the copyright law"); *Butler v. Cont'l Airlines, Inc.*, 2001 WL 1509545, at *3 (S.D. Tex. Nov. 19, 2001) (plaintiff's claims for conversion, unjust enrichment, and misappropriation of trade secrets arose from reproduction, distribution, or display of computer macros, and were therefore "equivalent claims" preempted by Copyright Act); 1 Nimmer on Copyright § 1.15 (2021) (recognizing that preemption extends to torts arising out of contractual relations, misappropriation, and unjust enrichment).   As Serca's counterclaims for tortious interference, misappropriation, and unjust enrichment all seek to vindicate and preserve its alleged exclusive rights of distribution within the meaning of § 106, and it fails to explain how these claims present any "extra element" that would otherwise defeat the equivalency test, the Court finds that the claims are preempted and must be dismissed.[26]

Plaintiffs also seek Rule 12(c) relief on Serca's counterclaim for an accounting, arguing that an accounting is an equitable remedy and not an independent cause of action, and/or that Serca has pleaded no basis to obtain it.  (Dkt. No. 66 at ¶¶ 44, 45).  Plaintiffs' two-fold argument cites only to federal district court cases that analyze Texas law,[27] overlooking—as Serca points out— that the federal Lanham Act authorizes a plaintiff to obtain an accounting of the defendant's profits

---

[26]   The Court also notes that Serca itself removed the present action on the uncontested grounds that Plaintiffs' original tortious interference claims were subject to federal copyright preempted.  *See* (Dkt. No. 1).

[27]   *See* (Dkt. No. 66 at ¶ 45); *Romero v. Bank of Am., N.A.*, 2014 WL 683898, at *5 (S.D. Tex. Feb. 20, 2014) (under Texas law, accounting is equitable remedy rather than independent cause of action); *Aguirre v. Nationstar Mortg. LLC*, 2014 WL 125957, at *2 (S.D. Tex. Jan. 13, 2014) (same); *Donnelly v. JP Morgan Chase, NA*, 2014 WL 429246, at *3 (S.D. Tex. Feb. 4, 2014) ("Whether an accounting is only an equitable remedy or also an independent cause of action, it is appropriate only 'when the facts and accounts presented are so complex that adequate relief may not be obtained at law.'") (quoting *Hutchings v. Chevron USA, Inc.*, 862 S.W.2d 752, 754 (Tex. App.-El Paso 1993, writ denied)).

resulting from trademark infringement if the court determines, upon consideration of a variety of factors, that "principles of equity" require it. *See* (Dkt. No. 72 at pp. 56-58); 15 U.S.C. § 1117(a); *e.g.*, *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 349 (5th Cir. 2002). Also, to the extent that Serca seeks the equitable remedy of an accounting under Texas law, the dispositive question— whether "the facts and accounts presented are so complex adequate relief may not be obtained at law"—is not answered by the pleading, and is better suited for determination at the damages phase of the case. *See* (Dkt. No. 72 at pp. 59-60); *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 243 (5th Cir. 2014) (quoting *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717 (Tex. App.-Houston [14th Dist.] 2002, pet. denied)). The Court declines to grant Rule 12(c) relief on Serca's claim for an accounting on the grounds asserted.

## VI. Plaintiffs' Motion for Summary Judgment

### A. Overview and Standard of Review

With respect to Serca's remaining counterclaims for unfair competition in violation of the Lanham Act, common-law unfair competition,[28] common-law trademark infringement, and violation of the DMCA, Plaintiffs move for summary judgment on the following grounds: (1) the Serca-Mexico Contract and Mexican judgments do not establish Serca's interest in the subject media; (2) Serca cannot show that it suffered damages, nor sufficiently establish the amount of any damages incurred; (3) Serca's common-law counterclaims are barred by the applicable two-year statute of limitations; and (4) Serca cannot establish the elements of its Lanham Act claim. (Dkt. No. 66 at ¶¶ 27-36).[29]

---

[28]   This counterclaim, which alleges unfair competition through Plaintiffs' use of the "La Leyenda" trademark, is distinct from Serca's claim for unfair competition by misappropriation. *See* (Counts 3, 5, 6).
[29]   The Court need not address Plaintiffs' additional arguments that Serca cannot establish elements of its tortious interference, unfair competition by misappropriation, and unjust enrichment counterclaims, as the Court has already determined that these claims are preempted. *See* (Dkt. No. 66 at ¶¶ 37-43).

A district court must grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  A fact is material if it might affect the outcome of the lawsuit under the governing law, and is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A party moving for summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings and materials in the record, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a), (c).  Once the moving party carries its burden, the burden shifts to the nonmovant to go beyond the pleadings and provide specific facts showing the existence of a genuine issue for trial.  *Celotex*, 477 U.S. at 324; FED. R. CIV. P. 56(c).  In conducting its review of the summary judgment record, the court "may not make credibility determinations or weigh the evidence" and must resolve doubts and reasonable inferences regarding the facts in favor of the nonmoving party.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255; *Dean v. City of Shreveport*, 438 F.3d 448, 454 (5th Cir. 2006).  However, the nonmovant cannot satisfy its burden with "conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence."  *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *see also Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

**B.      Serca's Interest in Subject Media**

Plaintiffs assert, without dispute, that Serca "can only prevail on its counterclaims if the Court determines that [Serca-Mexico], as a matter of law, has a contractual interest in the subject

media," which determination the Court can only make by relying on the Serca-Mexico Contract and the Mexican judgments. (Dkt. No. 66 at ¶ 27). The parties' dispute consists of their conflicting interpretations of this evidence, the resolution of which requires the Court's renewed foray into whether, and to what extent, it may give conclusive effect to the judgments at issue. *See* (Dkt. No. 66 at ¶¶ 28, 29; Dkt. No. 72 at pp. 38-42, 61-65; Dkt. No. 78 at ¶¶ 9-11). "Under principles of international comity," the Court must give conclusive effect to "a foreign court's judgment on a matter" when the following criteria are satisfied: "(1) the foreign judgment was rendered by a court of competent jurisdiction, which had jurisdiction over the cause and the parties, (2) the judgment is supported by due allegations and proof, (3) the relevant parties had an opportunity to be heard, (4) the foreign court follows procedural rules, and (5) the foreign proceedings are stated in a clear and formal record." *Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV*, 347 F.3d 589, 594 (5th Cir. 2003). The only factor previously found wanting by the Court was the third, both because Serca offered no evidentiary support for the allegation that Plaintiffs participated in, funded, and provided La Leyenda's legal representation in the Mexican litigation, and because the only judgment before the Court—the Amparo Judgment—did not reflect that any court "considered or adjudicated Serca-Mexico's *superior* right to ownership of [the subject media]," after giving Plaintiffs the right to be heard. (Dkt. No. 38 at p. 14) (emphasis in original). Serca has now produced evidence that Plaintiffs' longtime attorney represented La Leyenda in the Mexican litigation, and that Plaintiffs funded La Leyenda's litigation expenses. (Dkt. No. 72 at p. 62; *see* Dkt. No. 67, Exh. 6 at pp. 9-10; Exh. 7 at pp. 7-9, 43-47; Exh. 14 at pp. 10-11, 33-34). Generally, the opportunity to be heard belongs not only to parties but also to those in privity with them. *See Benson & Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172, 1174 (5th Cir. 1987). Privity may be shown in three situations:

> First, a nonparty who has succeeded to a party's interest in property is bound by any prior judgments against that party.... Second, a nonparty who controlled the original suit will be

> bound by the resulting judgment....   Third, federal courts will bind a nonparty whose
> interests were represented adequately by a party in the original suit[.]

*Id.* (quoting *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 864 (5th Cir.1985)).   The first does not apply here, and the second is not shown merely because "the nonparty supplied an attorney or is represented by the same," or that it "helped to finance the litigation"; these are "[l]esser measures of participation without control."   *Id.* (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4451, at 430-31 (1981)).   The third scenario "does not pertain to the competence of the previous litigation" but to "the concept of virtual representation, by which a nonparty may be bound because the party to the first suit is so closely aligned with [the nonparty's] interests as to be [its] virtual representative.'"   *Id.* at 1175 (quoting *Freeman*, 833 F.2d at 864) (internal quotation marks omitted).   "Virtual representation demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues."   *Id.* (quoting *Pollard v. Cockrell*, 578 F.2d 1002, 1008 (5th Cir. 1978)).   Now that Serca has supplemented the record with the September 2017 judgment, the Court is better poised to determine the adjudicated matters on which La Leyenda had an opportunity to be heard, and to find that Plaintiffs were adequately represented in certain, limited respects.

When considered together, the judgments establish that La Leyenda had an opportunity to be heard on the adjudicated issue of the Serca-Mexico Contract's date of execution—February 15, 2011, such that the contract remained "valid" through 2016—and La Leyenda's consequent breach of the third "exclusivity" clause in connection with the album recorded for Remex and song publicized by Remex in 2015.   As Plaintiffs admit, the remedy fashioned by the courts consisted of a continued obligation on the part of La Leyenda to record two additional albums for Serca-Mexico, as agreed to in the sixth clause, and the September 2017 judgment conditionally "absolved" La Leyenda of any obligation to pay monetary damages due to their breach of the third

clause.  *See* (Dkt. No. 78 at ¶ 11; Dkt. No. 72, Exh. B at pp. 128, 135-36; Exh. C at p. 45).  This

Court previously questioned whether the Amparo Judgment's recognition of the Serca-Mexico

Contract as remaining "in full force and effect" pending fulfillment of the remedy was dicta, and

to the Court's knowledge, the September 2017 judgment contains no similar language.  *See* (Dkt.

No. 38 at p. 14).  However, the Court now recognizes—with guidance from a separate portion of

the Amparo Judgment—that the observation has basis in the Serca-Mexico Contract itself, where

it states that the contract "will be deemed as extended, regardless of the termination date thereof,"

until La Leyenda "fulfills all the obligations provided in the [contract] to the entire satisfaction of

[Serca-Mexico]."  (Dkt. No. 66, Exh. 9 at p. 27; Dkt. No. 72, Exh. 2 at p. 57).  Whether and for

how long the Serca-Mexico Contract was still in effect when La Leyenda entered into the Chavez

Brothers Contract, whether La Leyenda's master sound recordings produced by Remex and the

distribution of those recordings breached the third clause of the Serca-Mexico Contract, and the

remedy for any such breach are issues on which the interests of La Leyenda and Plaintiffs so

closely align—more pointedly, on which La Leyenda is accountable to Plaintiffs as assignees of

the Chavez Brothers' express contractual rights—that the Court may deem La Leyenda's

opportunity to be heard on those issues as extending to Plaintiffs.  In these respects, the Mexican

judgments may be given conclusive effect.[30]

The judgments establish that the Serca-Mexico Contract remained in effect at the time

Plaintiffs recorded and uploaded the subject media, such that Plaintiffs' actions aided La

Leyenda's breach of the third clause of the Serca-Mexico Contract.  To the Court's knowledge,

the third clause is the only portion of the contract to directly address sound recordings made by a

---

[30]  As the Mexican courts resolved, for purposes of this litigation, the parties' dispute over the date of the
Serca-Mexico Contract's execution, that Cano, Jr.'s declaration persists in identifying February 15, 2012
as the date of execution lends nothing to the record, even if the Court need not formally sustain Plaintiffs'
objection to this portion of the declaration as a calculated misrepresentation.  *See* (Dkt. No. 73, Exh. G at ¶
3; Dkt. No. 76 at ¶ 2).

third party during the contract term.[31]   Consistent with the Mexican court's finding of breach, the clause: "confirms, affirms and guarantees to [Serca-Mexico] the unconditional, unlimited and total exclusivity on every performance and interpretation *susceptible* to be fixed and/or incorporated in" the sound recordings covered by the contract; prohibits La Leyenda, during the contract term, from making sound recordings for a third party without Serca-Mexico's authorization; and prohibits La Leyenda and any "third party appointed by [La Leyenda]" from exercising rights to "any of the MUSICAL SELECTIONS interpreted under protection of this agreement" without Serca-Mexico's authorization.   (Dkt. No. 66, Exh. 9 at pp. 24-25) (emphasis added).   In determining that La Leyenda breached the third clause not only by recording the album produced by Remex, but in connection with Remex's publicizing of one of the recorded songs, the Mexican court accepted the premise that sound recordings to which Serca-Mexico had exclusive rights included recordings made by third parties.   More basically, Plaintiffs' claimed rights to La Leyenda's master sound recordings were never La Leyenda's to give, since those rights had already been contracted away to Serca-Mexico.   Serca-Mexico's exclusive rights to the La Leyenda/Remex master sound recordings, once established—as they were through the Serca-Mexico Contract and the Mexican court's finding of breach—did not exchange hands simply because the courts fashioned a particular remedy, or because the contract term expired.   Serca, as Serca-Mexico's assignee of those rights, held and now holds the exclusive rights to those recordings, to include rights of U.S. distribution and digital transmission, and therefore sufficient interest in the subject media to defeat Plaintiffs' request for summary judgment.

---

[31]  The eighth clause contains La Leyenda's agreement not to allow a third party to exercise rights to sound recordings that are the property of Serca-Mexico under the contract even after its termination, but does not speak to whether recordings made by a third party during the contract term are in fact the property of Serca-Mexico.  *See* (Dkt. No. 66, Exh. 9 at p. 29).

C.    **Damages**

Plaintiffs next move for summary judgment on Serca's claims for damages, first arguing that Serca cannot show that it suffered any damages because "it is essentially a pass-through entity that is intended to serve as a conduit for [Serca-Mexico's] business dealings," and also because Cano testified that La Leyenda has never generated profit for his companies.  (Dkt. No. 66 at ¶¶ 30, 31; *see also* Dkt. No. 78 at ¶ 13).  Plaintiffs assert that "Cano cannot have it both ways: he cannot come before the Court (via Serca) and claim big damages when his excuse for having never paid royalties to La Leyenda is that the expenses exceed the revenues."  (Dkt. No. 66 at ¶ 30).  In their reply, Plaintiffs further assert that "[b]y seeking to stand in [Serca-Mexico's] shoes, it is axiomatic that Serca cannot possess any greater damages than [those] incurred by [Serca-Mexico]."  (Dkt. No. 78 at ¶ 14).  "Accordingly, because the Mexico courts have determined that [Serca-Mexico] has already been afforded all to which it is entitled in connection with the production of the Subject Media, Serca cannot now come before this Court seeking to recover damages that are predicated on that production."  (*Id.*).

Plaintiffs' appeal to Serca's alleged "pass-through" status, as well as Serca's response, miss the mark.  Even if Serca serves as a "conduit" through which all earnings from U.S. sales pass to Serca-Mexico, and regardless of courts' recognition of "pass-through" claims as a means to sidestep the absence of privity between a damaged nonparty and the defendant, the Court has already concluded that the Serca-Mexico Contract renders Serca-Mexico's and Serca's rights coextensive, that Serca has standing to sue Plaintiffs for alleged interference with those rights, and that Plaintiffs were, in certain respects that include the remedy afforded, in privity with La Leyenda in its litigation with Serca-Mexico.  *See* (Dkt. No. 66 at ¶ 30; Dkt. No. 72 at p. 43); *e.g.*, *Interstate Contracting Corp. v. City of Dallas, Tex.*, 320 F.3d 539, 543-44 & n.4 (5th Cir. 2003), *certified question accepted* (Mar. 6, 2003), *certified question answered sub nom. Interstate Contracting*

*Corp. v. City of Dallas*, 135 S.W.3d 605 (Tex. 2004). In other words, Serca's status as a "pass-through" entity neither defeats nor enables its claims. Cano's testimony also fails to supply a basis for summary judgment; it may, if believed, cast doubt on Serca's claim that it suffered "big" damages or damages at all, but even credible testimony that the Serca entities' expenses exceeded revenues and failed to generate royalties to La Leyenda in the past does not foreclose the possibility that U.S. distribution of the subject media would result in a profit.

Plaintiffs' argument that the Mexican judgments nonetheless foreclose an award of damages to Serca warrants closer examination. Plaintiffs explain, consistent with the Court's reading of the Serca-Mexico Contract's third "exclusivity" clause and the September 2017 judgment, that La Leyenda's breach of the third clause via the Remex recordings gave way to Serca-Mexico's contractual right to seek damages, but in the absence of any evidence of the same, the court declined to award damages unless and until La Leyenda failed to complete the additional recordings required by the sixth clause. (Dkt. No. 78 at ¶ 11; *see* Dkt. No. 72, Exh. B at pp. 127-29, 136). Serca provides no contrary reading, nor does it controvert Plaintiffs' showing that La Leyenda has fulfilled the adjudicated remedy, thus foreclosing an award of damages to Serca-Mexico for La Leyenda's breach of the third clause, as determined by the September 2017 judgment. Serca's ability to recover for Plaintiffs' involvement in that breach stems from the same contract and judgment, which as the Court has found, may be given conclusive effect with respect to the court's finding of breach and the remedy afforded. Again, the Court construes the breach finding as a determination that Serca-Mexico (and therefore Serca) have exclusive rights to the subject media produced by Remex, but it does not follow that the damages eschewed by the court in favor of requiring the additional recordings are for Plaintiffs' exercise of all such rights. If this were the case, Plaintiffs could continue to upload the subject media for streaming, and Serca would have no recourse for damages. The Mexican court was, again, concerned with Remex's recording

of an album and its publicizing of a song.  To the extent that Serca claims damages resulting from Plaintiffs' attempts to otherwise interfere with Serca's exclusive rights of U.S. distribution and digital transmission, the Mexican judgments do not require summary judgment in this case.

In the alternative, Plaintiffs request summary judgment on the grounds that "the evidence supports a determination that—even if damages have been sustained—Serca is incapable of satisfactorily quantifying [them] with sufficient evidence."  (Dkt. No. 66 at ¶ 32; *see also* Dkt. No. 78 at ¶ 13).  As Plaintiffs observe, testimony submitted in support of their Motion constitutes evidence that the Cano family members, and Serca's only non-family member employee, Veronica Blanco, cannot themselves account for the company's damages.  *See* (*id.*).  Additional deposition excerpts cited by Serca confirm this, and/or fail to support the broad claims asserted in Serca's response.  Far from testifying, as the response claims, that Serca "has been a profitable company which has been greatly damaged by Plaintiffs' wrongful actions," Blanco posited that Serca must be making a profit because it is still in business, and acknowledged that the company had received Select-O-Hits' accountings and payment of revenues from U.S. sales of La Leyenda's and other artists' music, that she then forwarded to Mexico or deposited for distribution by the Mexican office, respectively.  (Dkt. No. 72 at p. 42; *see* Dkt. No. 67, Exh. 15 at pp. 45-47, 81-86, 88-89).  Citing in part to Cano, Jr.'s testimony, Serca further claims that its damages include "[t]he loss of La Leyenda's services during the contract period and lost profits resulting therefrom, which [Serca] calculates to be at least $300,000.00," but the only damages figure to which Cano, Jr. testified was his own subjective estimation that the public nature of Plaintiffs' interference with the Serca entities' contractual relationship with La Leyenda had damaged the company image in the amount of $1 million.  (Dkt. No. 72 at p. 42; *see* Dkt. No. 67, Exh. 2 at pp. 46-48, 86-87, 90-91, 98).  Cano, Jr.'s declaration, to which Serca further appeals, also contains no reference to the $300,000 figure.  *See* (Dkt. No. 72 at p. 42; Dkt. No. 73, Exh. G; Dkt. No. 76 at ¶ 1 n.3).  The final

exhibit on which Serca relies to claim lost profits of $300,000 consists of what Cano, Jr.'s declaration describes as "a summary of the digital sales from La Leyenda's sound recordings based on the voluminous sales information that we have produced for this case and [is] available for inspection," including documents labeled "SERCA 006952-041453," "which show [Serca's] income from the distribution of La Leyenda's sound recordings by year and decline in 2015 when they were signed by Plaintiffs and thereafter."  (Dkt. No. 72 at p. 42; Dkt. No. 73, Exh. G at ¶ 6, Exh. H).  Plaintiffs object to the summary chart and to Cano, Jr.'s statement describing it, arguing that the chart is conclusory and does not present information in a form that would be admissible in evidence, and that Cano, Jr. lacks personal knowledge of the information contained therein.  (Dkt. No. 76 at ¶¶ 2, 3).  Cano, Jr.'s challenged description invokes the federal evidentiary rule allowing use of summary charts "to prove the content of voluminous writings…that cannot be conveniently examined in court" when, in relevant part, they are based on competent evidence, the primary evidence used to construct the charts is available to the other side for comparison so that the correctness of the summary may be tested, and the person who prepared the chart is available for cross-examination. FED. R. EVID. 1006; *United States v. Bishop*, 264 F.3d 535, 547 (5th Cir. 2001). Cano, Jr.'s statement is also subject to the rule that an "affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4); *see also Daneshjou v. JPMorgan Chase Bank, N.A.*, 799 F. App'x 296, 298 (5th Cir. 2020) (declaration is acceptable means of authenticating evidence, but to do so, it must comply with Rule 56(c)(4)).  Cano, Jr. attests to the availability of the underlying evidence, but his generalized description of it does not permit the Court to ascertain its competence.  *See* (Dkt. No. 76 at ¶ 2).  He also provides no indication of who prepared the chart, and his testimony otherwise disavowing knowledge of Serca's accounting matters undercuts any

claim that he did so himself, or that he has personal knowledge of the information summarized. *See* (*id.* at ¶ 2 & n.5). The Court therefore sustains Plaintiffs' objections to the chart and to Cano, Jr.'s statement describing it, and finds that they do not constitute competent summary judgment evidence. Even if they did, the chart fails to identify lost profits attributable to Plaintiffs in the dollar amount asserted in Serca's response; it reflects digital sales (not profits) from 2007 through 2019 that were minimal in the early years of the chart, peaked at $46,940.69 in 2014, and after a substantial decrease in 2015, earned $26,331.88 and $27,838.12 for Serca in 2017 and 2018 before decreasing again in 2019. *See* (Dkt. No. 73, Exh. H).

Citing to the deposition and report of Plaintiffs' proffered accounting expert, Mariela Ruiz, Serca's response next asserts that "Plaintiffs' own damages expert admitted that her analysis would apply to [Serca's] damages from the Plaintiffs' contract interference, thereby making Serca's damages in the amount of at least $2,287,989.22." (Dkt. No. 72 at p. 42; *see* Dkt. No. 64, Exh. A; Dkt. No. 73, Exh. D at pp. 45-47). Notwithstanding that Serca has separately moved to *exclude* Ruiz's opinion, Ruiz never admitted to any interference on the part of Plaintiffs and testified only that her lost income calculations would be the same regardless of whether Plaintiffs or Serca issued the takedown notices, and who was in the wrong, not that Plaintiffs' total estimated loss following Serca's first takedown notice, in the amount of approximately $2.28 million, is an interchangeable damages figure. *See* (Dkt. No. 64, Exh. A; Dkt. No. 73, Exh. D at pp. 45-47; Dkt. No. 76 at ¶ 3; Dkt. No. 78 at p. 8). As Plaintiffs observe, Ruiz's damage model is unique to them, in that it considers the "level of time and money that [Plaintiffs] would have invested in recording and promoting La Leyenda," and their "historical success with comparable artists." (Dkt. No. 78 at p. 8; *see* Dkt. No. 64, Exh. A). Serca further emphasizes Ruiz's testimony that Plaintiffs generated close to $2 million from La Leyenda's music during an approximately one-year period (from May 2018 through June 2019), and provides its own exhibit characterized by Cano, Jr.'s declaration as

a summary of "voluminous documents produced by the Plaintiffs in this case, including [LEYENDA 000345, 000352, 000375-002239, and 002246-002678], which show that Plaintiffs have benefitted in the amount of at least $3,049,161.40 from La Leyenda" during the term of the Serca-Mexico Contract.  (Dkt. No. 72 at p. 42; *see* Dkt. No. 73, Exh. D at pp. 99-103; Exh. G at ¶ 7; Exh. I).[32]  For reasons discussed *supra*, and reiterated by Plaintiffs in their objections to the summary chart and to Cano, Jr.'s description of it, this evidence must be disregarded; the Court has no basis to determine the competence of the underlying evidence or who prepared the chart, and Cano, Jr.'s testimony casts doubt on any claim that he has personal knowledge of the information summarized.  *See* (Dkt. No. 76 at ¶¶ 2, 3).  Even if Ruiz's testimony aids in quantifying disgorgement or an accounting of Plaintiffs' profits, and regardless of the merits of Serca's remaining assertions that it is also entitled to statutory damages and attorney's fees, Serca's response confirms its inability to produce competent evidence to demonstrate its own lost profits, and Plaintiffs are entitled to summary judgment in this respect.  *See* (Dkt. No. 72 at pp. 42-43).

## D.    Statute of Limitations

Relevant to Serca's remaining common-law counterclaims, for unfair competition and trademark infringement, Plaintiffs move for summary judgment on the grounds that Serca first asserted these claims more than two years after learning of the Chavez Brothers Contract "of which the Cano family had immediate knowledge," and therefore the claims are barred by limitations.  (Dkt. No. 66 at ¶¶ 33, 34).[33]  Both of these claims challenge Plaintiffs' use of the "La Leyenda" trademark, alleging unfair competition by trademark infringement.  *See* (Dkt. No. 58 at Counts 5,

---

[32]  To the extent that Serca also relies on that portion of Cano, Jr.'s declaration stating that Ruiz admitted to Plaintiffs' receipt of $2 million in sales from June 2018 to May 2019 due to "Plaintiffs' interference with [Serca's] contracts," the Court sustains Plaintiffs' objection to this statement, as Ruiz's testimony and report constitute the best evidence of her opinion.  *See* (Dkt. No. 73, Exh. G at ¶ 5; Dkt. No. 76 at ¶ 2); FED. R. EVID. 1002.

[33]  The Court need not consider this argument as it relates to Serca's common-law counterclaims subject to federal copyright preemption.

6). Thus, the claims essentially merge, and Serca does not dispute Plaintiffs' position that the two-year statute of limitations applicable to Texas-law unfair competition claims, as set forth in Texas Civil Practices and Remedies Code § 16.003, applies to both. *See* (Dkt. No. 66 at ¶ 33); Tex. Civ. Prac. & Rem. Code § 16.003; *First Nat'l. Bank of Eagle Pass v. Levine*, 721 S.W.2d 287, 289 (Tex. 1986) (approving of Fifth Circuit's holding that predecessor statute to § 16.003 applied to common-law claims alleging unfair competition) (quoting *Coastal Distrib. Co., Inc. v. NGK Spark Plug Co., Ltd.*, 779 F.2d 1033, 1038 (5th Cir. 1986)); *Derrick Mfg. Corp. v. Sw. Wire Cloth, Inc.*, 934 F. Supp. 796, 805-06 (S.D. Tex. 1996) (§ 16.003 applies to claim for common-law unfair competition based on trademark infringement). Serca does dispute that § 16.003 bars its counterclaims, first on the basis that these claims invoke the "continuing violation" theory applicable where: (1) "the original violation occurred outside the statute of limitations, but is closely related to other violations that are not time-barred," such that "recovery may be had for all violations, on the theory that they are part of one, continuing violation"; and (2) "an initial violation, outside the statute of limitations, is repeated later," in which case "each violation begins the limitations period anew, and recovery may be had for at least those violations that occurred within the period of limitations." (Dkt. No. 72 at pp. 44-45); *Hendrix v. City of Yazoo City, Miss.*, 911 F.2d 1102, 1103 (5th Cir. 1990). Even if Plaintiffs' challenged use of the "La Leyenda" mark first occurred on or around August 17, 2015, the date the Chavez Brothers Contract commenced, the record provides some basis to hold that closely related and/or repeated use of the mark continued into the two years prior to the date Serca first asserted its counterclaims, on August 24, 2018,[34] thereby cautioning against summary judgment on Plaintiffs' affirmative defense of limitations. *See* (Dkt. No. 5 at Counts 2, 3; Dkt. No. 72 at p. 44); *Derrick Mfg.*, 934 F. Supp. at 807-08 (after observing that "[t]rademark infringement is a continuing tort in Texas," finding that

---

[34]  Indeed, German admits that the La Leyenda songs and videos produced by Remex were uploaded by Plaintiffs and available for streaming in 2017.

sales and display of items marked with plaintiff's trademarks and/or sold under invoices with plaintiff's product numbers were "repeated instances of one or more trademark violations, occurring both before and after the statute of limitations began to run") (quoting *Two Pesos, Inc. v. Gulf Insurance Co.*, 901 S.W.2d 495, 500-01 (Tex. App.-Houston [14th Dist.] 1995, no writ)); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (party moving for summary judgment on affirmative defense must establish defense "beyond peradventure" to warrant judgment in its favor).  Moreover, the Court accepts Serca's second argument that its claims find safe harbor in § 16.069, which allows a party to file, with its answer, a counterclaim otherwise barred by limitations if that counterclaim "arises out of the same transaction or occurrence that is the basis of [the original] action."  (Dkt. No. 72 at pp. 45-46); TEX. CIV. PRAC. & REM. CODE § 16.069.  Courts make this determination by applying the "logical relationship test," which asks "whether the essential facts on which the claims are based are significantly and logically relevant to both claims."  *Hacienda Records, LP v. Ramos*, 2015 WL 6680597, at *3 (S.D. Tex. Nov. 2, 2015), *aff'd sub nom. Hacienda Records, L.P. v. Ramos*, 718 F. App'x 223 (5th Cir. 2018) (quoting *Wells v. Dotson*, 261 S.W.3d 275, 281 (Tex. App.-Tyler 2008, no pet.)); (Dkt. No. 72 at p. 46).  Plaintiffs' suit, and in particular, their remaining DMCA claim, is based on Serca's takedown notices disputing Plaintiffs' rights to the Remex-produced La Leyenda songs and music videos—a dispute echoed in Serca's counterclaims alleging that Plaintiffs engaged in unfair competition and trademark infringement by using the "La Leyenda" mark "to sell music, the same type of product sold by [Serca]," and by "passing off the Songs as authorized by [Serca]."  (Dkt. No. 5 at Count 2; Dkt. No. 58 at Count 5).  More basically, as Serca observes, the parties "are arguing over the same rights in and to the same property," each side claiming a contractual source for those rights.  *See* (Dkt. No. 72 at pp. 46-47); *see Hacienda Records*, 2015 WL 6680597, at *3 (logical relationship test satisfied where both sides sought declaration of rights to songs recorded pursuant to one or

more contracts).  Serca's counterclaims meet the logical relationship test, and § 16.069 saves them from any otherwise applicable time-bar, and from summary judgment.

## E.  Lanham Act Claim

Finally, Plaintiffs take aim at Serca's statutory unfair competition claim asserted under the Lanham Act, arguing that Serca cannot establish two required elements of its claim: ownership of the "La Leyenda" trademark, and infringement demonstrating a likelihood of confusion.  (Dkt. No. 66 at ¶¶ 35, 36); *see Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235-36 (5th Cir. 2010) (identifying ownership and likelihood of confusion as "two elements to a successful infringement claim under the Lanham Act").  However, for the reasons explained in the Court's discussion of Serca's standing to assert this claim, and reiterated in Serca's response, a nonowner of a mark claiming exclusive rights to its use—as Serca does, via the Serca-Mexico Contract— may sue and recover for unfair competition under § 1125 of the Act.  *See* (Dkt. No. 72 at pp. 47-48).  Also, Plaintiffs' argument that "there can be no confusion because Serca has never had a contractual relationship with La Leyenda" overlooks Serca's status as Serca-Mexico's contractual assignee and U.S. distributor of La Leyenda music, and therefore Plaintiffs' competitor in the U.S. market.  (Dkt. No. 66 at ¶ 36; *see id.* at p. 48).  Plaintiffs uncover no basis for summary judgment on Serca's Lanham Act counterclaim, and in this final respect, the Motion must be denied.

## VII.  Serca's Renewed Motion for Summary Judgment

Simultaneously with its response, Serca purports to "renew" its request for summary judgment on Plaintiffs' single DMCA claim, claiming that additional evidence obtained since the Court's initial ruling compels a different result.  *See* (Dkt. No. 61-67).  Plaintiffs oppose the requested relief on the grounds that Serca "is making a poor attempt to sneak a motion past [the motions] deadline," as further evidenced by the fact that the "renewed" request does not seek reconsideration of the Court's initial ruling on the basis of the record then before it, but review of

a since-expanded record.  (Dkt. No. 78 at ¶ 17).  Serca's Renewed Motion for Summary Judgment is, in fact, untimely under the scheduling order in place when Plaintiffs filed their own Motion.  *See* (Dkt. No. 60).   However, in light of the Court's discretion to set and modify scheduling deadlines, *see* FED. R. CIV. P. 16(b), and because Serca's Motion turns on an issue raised and disposed of in the context of Plaintiffs' own Motion—whether, and to what extent, the Mexican judgments should be given conclusive effect—the Court finds it appropriate to consider Serca's Motion.  For reasons explained *supra*, supplementation of the summary judgment record with the September 2017 judgment enables the Court to now determine that principles of international comity require deference to the rulings of the Mexican courts.  Along with other portions of the record, it also compels a finding that Serca, not Plaintiffs, had exclusive rights to digitally transmit the subject media produced by Remex and uploaded to YouTube (as well as to Spotify and iTunes) by or through Plaintiffs, such that Serca's takedown notices contained no knowing or material misrepresentations actionable under § 512(f) of the DMCA.  *See* 17 U.S.C. § 512(f).  Serca is entitled to summary judgment on Plaintiffs' DMCA claim against it.

## VIII.   Conclusion

For the foregoing reasons, the Court hereby **ORDERS** the following:

Plaintiffs' Motion to Dismiss Serca's counterclaims under Rule 12(b)(1) and Rule 12(b)(7), and for forum non conveniens, is **DENIED**;

Plaintiffs' Motion for Judgment on the Pleadings under Rule 12(c) is **GRANTED** in part as to Serca's counterclaims for tortious interference with contract and prospective economic advantage, misappropriation, and unjust enrichment, which claims are **DISMISSED** with prejudice as preempted by federal copyright law, and otherwise **DENIED** as to Plaintiffs' claim for an accounting;

Plaintiffs' Motion for Summary Judgment is **GRANTED** in part as to Serca's request for damages consisting of its lost profits, and otherwise **DENIED**; and

Serca's Renewed Motion for Summary Judgment (Dkt. No. 72) is **GRANTED** as to Plaintiffs' DMCA claim, which is **DISMISSED** with prejudice.

SO ORDERED January 26, 2022, at McAllen, Texas.

Randy Crane
United States District Judge